(73 Misc. Rep. 404.)

## In re UNION BANK OF BROOKLYN.

(Supreme Court, Special Term, Kings County. September 9, 1911.)

1. BANKS AND BANKING (§ 17*)—REGULATION—PUBLIC EXAMINERS—AUTHORITY OF SUPERINTENDENT OF BANKS.

Banking Law (Consol. Laws 1909, c. 2) § 8, authorizes the Superinteudent of Banks to investigate the mode of conducting and managing the affairs of a bank, and to require persons to give information under oath, and, under sections 18 and 19, the Superintendent may take possession ·of the bank upon refusal to disclose the information asked. *Held*, construing section 8 in view of the provisions of former banking laws upon the subject, that the Superintendent of Banks could investigate the condition of a bank and the acts of its officers by requiring them to testify under oath even after it had been closed, and taken possession of by him, under section 19.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 21, 22; Dec. Dig. § 17.*]

2. BANKS AND BANKING (§ 29*)—REGULATIONS—CUSTODY OF BANK DEPARTMENT.

A state bank maintains its corporate existence and officers even after the books and assets have been taken possession of by the State Superintendent of Banks, and the bank has been closed to business.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 29.*]

3. BANKS AND BANKING (§ 4*)—STATUTES—CONSTRUCTION—ADMINISTRATIVE STATUTES.

Powers of administration granted by statute, the exercise of which is necessary to safeguard important public interests, such as banking, should not be unduly narrowed by construction.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 4.*]

4. WITNESSES (§ 1*)—ENFORCEMENT OF ATTENDANCE—VALIDITY OF STATUTES.

Code Civ. Proc. § 855, providing that a subpœna summoning a witness before an officer or body, not a court, may be enforced by a warrant issued by any judge to compel the appearance of the defaulting witness, is not unconstitutional.

[Ed. Note.—For other cases, see Witnesses, Dec. Dig. § 1.*]

In the matter of the Union Bank of Brooklyn. Application for a warrant to compel the attendance of Edward M. Grout, president, as a witness in an investigation by the State Superintendent of Banks. Application granted as stated.

Thomas Carmody, Atty. Gen. (W. W. Chambers, Deputy, of counsel), for petitioner.

Martin W. Littleton, Frank R. Greene, and F. Sydney Williams, for respondent Grout.

PUTNAM, J. Application under section 855 of the Code of Civil Procedure for a warrant to compel the attendance of Mr. Edward M. Grout, president of the bank.

The Union Bank, as a state bank, is one of the corporations subject to be inspected by the Superintendent of Banks. Before August, 1908, it had been known as the Mechanics' & Traders' Bank. It was then reopened as the Union Bank, under the presidency of Mr. Grout, who remained its president on April 5, 1910, when the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

State Superintendent of Banks closed it, and took possession of its property. In the course of examining the bank's affairs, the Deputy Superintendent of Banks is holding public hearings at which witnesses are called, sworn, and questioned. When Mr. Grout's presence was suggested, he first offered to appear voluntarily. Later he asked to be informed as to the proposed line of inquiry, with an opportunity to refresh his recollection by consulting the accounts of the bank as to details that he could not carry in mind, but, when certain differences arose, it was decided that the authority of the Bank Superintendent to call on Mr. Grout to testify should be tested in court.

This application raises two points: First, the right of the banking department to conduct this inquiry; and, second, the constitutionality of Code section 855, enforcing the attendance of defaulting witnesses.

[1] The wording of section 8 of the banking law gives power to the Superintendent to investigate the affairs of a bank. The Superintendent and an examiner under him may put persons under oath, so that the information thus to be obtained shall have the sanction of sworn testimony. It is contended, however, that this provision is limited to investigating a bank which is then doing business, and that the authority ceases after the business and property of the bank have been taken into possession by the banking department under section 19 of the banking law. While section 8 undoubtedly applies to banks that are normally transacting business, it would often be quite as essential to look into the "mode of conducting and managing its affairs" after the Superintendent had temporarily closed the bank doors. The taking possession of a bank is often necessary as a temporary protection of the public, while upon the Superintendent is devolved the difficult and responsible duty to decide whether or not the condition and affairs of the bank are, or can be, put into such a solvent state that it may be allowed to resume business. It is, however, pointed out that by sections 18 and 19 the case of a refusal to disclose information may be a ground for the Superintendent to take possession of the bank, and that this provision indicates that an investigation of a bank before closing, and not after it is taken possession of, is all the power of investigation that the Legislature has authorized.

When the legislative intent is considered, it must be borne in mind that the witness now summoned is not an outsider, a depositor, or merely a stockholder, but the official head of the bank.

[2] And, even though the bank books and assets are in the custody of the banking department, the corporation has not been dissolved, but maintains its corporate charter existence, with its directors and president still in office. Lafayette Trust Co. v. Higginbotham, 136 App. Div. 747, 121 N. Y. Supp. 489. Could the Legislature have intended that the exercise of the right under section 19 to take possession and temporarily assume charge of the bank's property—a step often required in an emergency—should thereby stop and cut off the power to investigate the bank officers and employés as to the con-

cerns of the bank, and the conduct and administration of its officers up to the day of closing? Such an interpretation would defeat the purpose of the law, as the Superintendent might then naturally delay his taking possession, if that step, otherwise necessary, was at once to tie his hands from the exercise of the right to examine the officials of the bank, the solvency, or impaired condition, of which it was necessary officially to ascertain. The state supervision over banking has always been a subject of careful, thorough, and minute legislation. No other business (not even insurance) requires such scrutiny, regulation, and control. The "safety fund" banking law of 1829 conferred this power of examination. Section 17 authorized the bank commissioners or either of them "to examine upon oath, all the officers, servants or agents of said corporations, *or any other person,* in relation to the affairs and condition of said corporation." Chapter 94, Laws 1829. And, after bank commissioners were abolished in 1843, this means of investigation was continued in some state official.

[3] Powers of administration, the exercise of which is thus necessary to safeguard public interests, should not be cut down or narrowed unduly by construction. Interstate C. C. v. Brimson, 154 U. S. 447, 476, 155 U. S. 3, 14 Sup. Ct. 1125, 15 Sup. Ct. 19, 38 L. Ed. 1047, 39 L. Ed. 49; Same v. Baird, 194 U. S. 25, 46, 24 Sup. Ct. 563, 48 L. Ed. 860. Hence, notwithstanding the closing of the Union Bank, the Superintendent of Banks is still empowered to investigate its concerns, the action of its officers and directors, by testimony obtained under the administration of an oath. The affidavit of the Superintendent of Banks that Mr. Grout's testimony is material and necessary for the purposes of such investigation can hardly be questioned in view of Mr. Grout's official position, from which he has not been ousted by the temporary closure of the bank. It also appears that the official reports of Mr. Grout are a subject of inquiry before the Superintendent. Hence the Superintendent of Banks could issue a subpœna under Code section 854 to compel Mr. Grout's appearance.

[4] Code section 855 provides for enforcing such a subpœna where a witness is called before an officer, person, or body which is not a court. It directs that in such case any judge may issue a warrant to the sheriff to compel the appearance of such defaulting witness.

I cannot discover any ground to hold this familiar provision unconstitutional. Under it subpœnas have been enforced in aid of commissions to take testimony, examinations, and many other investigations not strictly in court, but conducted under legal authority. It has been sustained in Matter of Superintendent of the Poor, 6 App. Div. 144, 39 N. Y. Supp. 878. The federal decisions cited do not touch the right to call a witness, but rather the extent of the inquiry after the subpœna has been obeyed. Thus, Mr. Harriman's official acts were disclosed before the Interstate Commerce Commission. It was only when questioned on his private affairs that his objections were sustained. Harriman v. Interstate Commerce Commission, 211 U. S. 407, 29 Sup. Ct. 115, 53 L. Ed. 253. The grant-

ing of this application cannot deal with objections that might be made to questions touching the affairs of the bank before Mr. Grout became an officer, or inquiries into his private affairs, which involve questions under section 856 of the Code. Hence I think that Mr. Grout was required to obey the subpœna, and that a warrant should issue to cause his attendance. But this applies only to such an examination as the statute authorizes; that is, one conducted by the Superintendent of Banks, or under his authority.

In order, however, to afford an opportunity for a voluntary compliance with the subpœna, or to review this order on appeal, the warrant will not issue for five days.