(October 2, 1915.)

STATE, to and for the Use and Benefit of O. W. ALLEN et al., Respondents, v. TITLE GUARANTY AND SURETY COMPANY OF SCRANTON, PENNSYLVANIA, a Corporation, and VERNON W. PLATT, Appellants.

[152 Pac. 189.]

JURISDICTION—AMOUNT IN CONTROVERSY—PARTIES—CAUSES OF ACTION —MISJOINDER—PUBLIC OFFICERS—POWERS AND DUTIES—DISCRETIONARY POWERS — CONSTITUTIONAL LAW — ACTION PREMATURELY BROUGHT—INTEREST.

1.   Where a state, as trustee of an express trust, sues to recover sums which, in the aggregate, exceed $3,000, exclusive of interest and costs, for and on behalf of certain depositors in a bank whose deposits have been lost as a result of the failure of the bank commissioner to perform his official duty and where the claim of no individual depositor amounts to $3,000, although diversity of citizenship exists between the parties to the action, a petition for removal to the federal court was properly denied.

2.   In such case the state was plaintiff for the use and benefit of the depositors, and properly united the several causes of action stated in the complaint, since they arose out of contracts, and the causes of action so united affect all parties to the suit and did not require different places of trial. The demurrer to the complaint upon the ground of misjoinder of parties plaintiff and misjoinder of causes of action was properly overruled.

3. Where power is given by statute to a public officer in permissive language—as that he *may* do a certain thing,—the language used will be regarded as peremptory if the public interest or individual rights require that it should be so regarded.

4.   The law invests a bank commissioner with discretion while he is making his investigation and up to the point where he reaches the conclusion and becomes satisfied that the bank has unlawfully refused to pay its depositors and has become insolvent, but at this point his discretion ends and it becomes his mandatory duty to close it, a duty the failure to perform which renders him and the surety upon his official bond liable to depositors who lose their money as a direct result thereof.

5.   The provisions of secs. 73 and 74, chap. 124, Sess. Laws 1911, *held*, not to be in contravention of the 14th amendment of the con-

stitution of the United States nor of sec. 13, art. 1, nor secs. 2 and 13, art. 5, of the constitution of Idaho.

6. The contention that an action has been prematurely brought cannot be successfully made for the first time upon appeal, but must be made first in the trial court.

7. In cases of this kind, where the amount claimed is definite and certain or can be readily ascertained—of a character not wholly unliquidated—in the absence of a stipulation in the bond to the contrary and in the absence of a controlling statutory provision, interest begins to accumulate as against the surety on the bond at the same time as against the principal obligor. If a breach in the conditions of the bond creates a debt on the part of the principal, it becomes the debt of the surety as well, and if it is unnecessary to make demand upon the one in order to start the interest period, none need be made upon the other.

8. Where a statute imposes a duty upon one for the protection and benefit of others, and does not invest him with discretionary power in the matter, if he neglects to perform the duty, he is liable to those for whose protection the statute is enacted for any damage resulting proximately from his neglect, whether he be actuated by malice, a corrupt motive or otherwise.

APPEAL from the District Court of the Third Judicial District for Ada County. Hon. Charles P. McCarthy, Judge.

Action on official bond. Judgment for plaintiff. *Affirmed.*

John F. Nugent, S. H. Hays and P. B. Carter, for Appellant.

Petition for removal to the United States court should have been granted.

"When several plaintiffs unite to enforce a single title or right in which they have a common and undivided interest, it is enough if their interests collectively equal the jurisdictional amount." (*Troy Bank v. G. A. Whitehead & Co.,* 222 U. S. 39, 32 Sup. Ct. 9, 56 L. ed. 81; *Cowell v. City Water Supply Co.,* 121 Fed. 53, 55, 57 C. C. A. 393; *Shields v. Thomas,* 17 How. 93, 15 L. ed. 53; *Marshall v. Holmes,* 141 U. S. 589, 12 Sup. Ct. 62, 35 L. ed. 870; *Davies v. Corbin,* 112 U. S. 36, 5 Sup. Ct. 4, 28 L. ed. 627.)

The mere presence on the record of the state as a party plaintiff will not defeat the jurisdiction of the federal court if it appears that the state had no real interest in the controversy. (*Ex parte Nebraska,* 209 U. S. 436, 28 Sup. Ct. 581, 52 L. ed. 876.)

There is no warrant whatever in the statute or in the practice for making the state a party in a suit of this character. (*United States v. Shoup,* 2 Ida. 493, 21 Pac. 656; *Baker v. Bartol,* 7 Cal. 551; *Mendocino Co. v. Lamar,* 30 Cal. 628; *Mendocino Co. v. Morris,* 32 Cal. 145; *Heisen v. Smith,* 138 Cal. 216, 94 Am. St. 39, 71 Pac. 180.)

The demurrer to the complaint should have been sustained upon the ground of a misjoinder of parties plaintiff and of causes of action. (Pomeroy's Code Remedies, sec. 377; *Creer v. Bancroft L. & Irr. Co.,* 13 Ida. 407, 90 Pac. 228; *Benson v. Battey,* 70 Kan. 288, 78 Pac. 844, 3 Ann. Cas. 283.)

Administrative officers, such as bank commissioners, exercising *quasi*-judicial functions, cannot be questioned as to their judgments in matters which by the statute they are called upon to decide. (Mechem on Public Officers, sec. 640; 29 Cyc. 1444; 2 Cooley on Torts, p. 797; Throop on Public Officers, secs. 720, 721.)

The surety was liable for interest only from the time of the making of the demand. (*City of Dickinson v. White,* 25 N. D. 523, 143 N. W. 754, 49 L. R. A., N. S., 362, and cases there cited.)

Under plaintiffs' construction of the statute, no notice or hearing on the question of insolvency is provided for. This is not due process of law. (*Chicago, Milwaukee & St. Paul Ry. Co. v. State of Minnesota,* 134 U. S. 418, 10 Sup. Ct. 462, 33 L. ed. 970; 28 Harvard Law Review, 198.)

The action is prematurely brought. There can be no recovery until the amount of the loss is ascertained. (*People v. Supervisors of Livingston County,* 17 N. Y. 486.)

J. H. Peterson, Atty. Genl., and Martin & Cameron, for Respondent.

In order for a case to be removable on the grounds of diversity of citizenship, the controversy must be between citi-

zens of different states. A state is not a citizen within the meaning of the removal acts. (*Stone v. South Carolina*, 117 U. S. 430, 6 Sup. Ct. 799, 29 L. ed. 962; *Buxton v. Pennsylvania Lumber Co.*, 221 Fed. 718.)

This bond was given for the benefit and protection of bank depositors. (*State v. American Surety Co.*, 26 Ida. 652, 145 Pac. 1097.)

The state is the trustee of an express trust within the meaning of sec. 4092, Rev. Codes, and the suit was properly brought in the name of the state. (*People v. Stacy*, 74 Cal. 373, 16 Pac. 192.)

This court has heretofore said in *Bellevue State Bank v. Coffin*, 22 Ida. 210, 125 Pac. 816, that it is a fraud upon depositors for a bank known to be insolvent to continue running and receiving depositors' money.

By the Session Laws of 1911, chap. 124, sec. 36, p. 398, and sec. 71, p. 407, every officer of a bank is liable civilly to every depositor who suffers damage, when such officers accept deposits knowing that the bank is insolvent. Moreover, by sec. 71, any owner or officer of a bank who shall receive deposits knowing that a bank is insolvent shall be deemed guilty of a felony. This law in effect makes it the absolute, imperative, mandatory duty of the owners and officers of a bank to close a bank and stop receiving deposits when they know the bank is insolvent. Can it be argued in the face of such provisions that it is discretionary with a bank commissioner to allow a bank which he knows and is satisfied is insolvent to continue running? (*Nathan v. Uhlman*, 101 App. Div. 388, 92 N. Y. Supp. 13; *Cassidy v. Uhlmann*, 170 N. Y. 505, 63 N. E. 554; *State v. Beach*, 147 Ind. 74, 43 N. E. 949, 46 N. E. 145, 36 L. R. A. 179; *State v. Cadwell*, 79 Iowa, 432, 44 N. W. 700; *Parrish v. Commonwealth*, 136 Ky. 77, 123 S. W. 339; *State v. Cramer*, 20 Ida. 639, 119 Pac. 30; *Baxter v. Coughlan*, 70 Minn. 1, 72 N. W. 797.)

"Where power is given to public officers, whenever public or individual right calls for its exercise, the language used, though permissive in form, is in fact peremptory. In all such cases it is held that the intent of the legislature was not

to devolve a mere discretion, but to impose a positive and absolute duty." (*State v. American Surety Co., supra; Supervisors v. United States,* 4 Wall. 435, 18 L. ed. 419; *Hayes v. Los Angeles Co.,* 99 Cal. 74, 80, 33 Pac. 766; *State v. Kent,* 4 N. D. 577, 591, 62 N. W. 631, 635, 27 L. R. A. 686; *United States ex rel. Siegel v. Thoman,* 156 U. S. 353, 15 Sup. Ct. 378, 39 L. ed. 450; *Woolridge v. McKenna,* 8 Fed. 650, 662; *United States v. De Visser,* 10 Fed. 645; *Ralston v. Crittenden,* 13 Fed. 508, 512, 3 McCrary, 344.)

After the bank commissioner became satisfied that the bank was insolvent it became mandatory upon him to perform the ministerial act of taking charge of the bank. (*Flournoy v. City of Jeffersonville,* 17 Ind. 169, 79 Am. Dec. 468.) Sureties on official bonds are liable for negligence or malfeasance of their principal in the performance of acts which are done *virtute officii.* (29 Cyc. 1455; Throop on Public Officers, secs. 724–726; *Myers v. Colquitt* (Tex. Civ. App.), 173 S. W. 993.)

After the performance of a discretionary duty an officer may then be called upon, in the same statute, to perform a ministerial duty. (29 Cyc. 1443; *Speer v. Stephenson,* 16 Ida. 707, 102 Pac. 365; *Grider v. Tally,* 77 Ala. 422, 54 Am. Rep. 65; *State v. Chase,* 5 Ohio St. 528; *Merritt v. McNally,* 14 Mont. 228, 36 Pac. 44; *Utah Assn. of Credit Men v. Bowman,* 38 Utah, 326, Ann. Cas. 1913B, 334, 113 Pac. 63.)

The deposits for which this suit is brought were all due and payable on December 19, 1911. (2 Michie on Banks and Banking, p. 1323.)

"The insolvency of a bank or a stoppage of payment dispenses with the necessity of a demand and all deposits become due and payable forthwith. A demand need not be shown in an action by a depositor against a bank which has failed, where it affirmatively appears that it would have been fruitless had it been made." (*Thompson v. Union Trust,* 130 Mich. 508, 90 N. W. 295; *Colton v. Drovers' etc. Assn.,* 90 Md. 85, 78 Am. St. 431, 45 Atl. 23, 46 L. R. A. 388; *Scott v. Armstrong,* 146 U. S. 499, 13 Sup. Ct. 148, 36 L. ed. 1059; *Queenan v. Palmer,* 117 Ill. 619, 7 N. E. 470, 613;

*Armstrong v. Warner,* 10 Ohio Dec. 434; *Armstrong v. Law,* 11 Ohio Dec. 461; *Wheeler v. Commercial Bank,* 5 Ida. 15, 46 Pac. 830.)

An objection that a suit is prematurely brought cannot be urged for the first time on appeal. (*International Harvester Co. v. Elfstrom,* 101 Minn. 263, 118 Am. St. 626, 112 N. W. 252, 11 Ann. Cas. 107, 12 L. R. A., N. S., 343; *Atkinson v. Singer Mfg. Co.,* 35 N. Y. Supp. 117; *Nicholson v. Hendricks,* 22 La. Ann. 511; *Brownlee v. Marion Co.,* 53 Iowa, 487, 5 N. W. 610; *Williams v. Smith* (Tex.), 24 S. W. 1115; *Logan v. Slade,* 28 Fla. 699, 10 So. 25; *Blount v. McNeill,* 29 Ala. 473; *Johnson v. Meyer,* 54 Ark. 442, 16 S. W. 123; *Green v. Demoss,* 10 Humph. (Tenn.) 371.)

Issues not raised by the pleadings and presented to the trial court will not be considered on appeal. (*Miller v. Donovan,* 11 Ida. 545, 83 Pac. 608.)

MORGAN, J.—This action was commenced by the state of Idaho to recover on the official bond of Vernon W. Platt, former bank commissioner of Idaho, and the Title Guaranty and Surety Company of Scranton, Pennsylvania, his surety, for the use and benefit of O. W. Allen and 218 other depositors in the Boise State Bank, Limited, a separate cause of action being stated in the complaint on behalf of each of said depositors. The amount in dispute in each cause of action is separate and distinct from every other cause of action and none of the parties claimed any interest whatever in the demand of any other depositor. In none of the causes of action does the state, as a trustee of an express trust, under the statute, ask for any individual depositor for as much as $3,000, exclusive of interest and costs, the sum asked for each depositor being the amount of the balance due on his deposits between October 27, 1911, when it is alleged said bank commissioner, Platt, concluded an examination of the bank, and December 19, 1911, when he closed it.

It is alleged in the complaint that upon making his examination of the bank on the 25th, 26th and 27th of October, 1911, Platt became satisfied and knew its capital was impaired

and reduced below the amount required by law and below the amount certified to the commissioner as paid in, and that he failed, neglected and omitted to require its officers to make good such impairment or deficiency; that he became satisfied and knew it had unlawfully refused to pay one of its depositors in accordance with the terms on which the deposit was received; that he became satisfied and knew the bank was insolvent and that he failed, neglected and omitted to take charge of it and wind up its affairs as by law provided until the 19th of December, 1911. That by reason of his failure to perform his official duty in this behalf the persons for whose benefit this action was brought, believing the bank to be solvent, deposited therein various sums of money in amounts set out in the complaint.

The trial resulted in a verdict and judgment against the appellants, which judgment was rendered in favor of each of the beneficiaries named, for the several amounts found to be due them, the aggregate amount of which was $30,240.98. From said judgment and an order denying a new trial this appeal is taken.

The appellants, in the preparation of their brief, have failed to conform to rule 45 of the rules of practice, in that it does not contain a distinct enumeration of the several errors relied on. However, we will undertake to dispose of the points presented for our consideration.

The appellants filed a petition for removal of the cause from the state court to the district court of the United States and alleged therein, among other matters, that the amount in dispute exceeded the sum or value of $3,000, exclusive of interest and costs; that the controversy was between citizens of different states; that the state of Idaho was but a formal or nominal plaintiff, and that the parties for whose use and benefit the suit was brought were citizens of Idaho; that the defendant, Title Guaranty and Surety Company of Scranton, Pennsylvania, was a citizen of Pennsylvania and that the defendant Platt was a citizen of Oregon. The petition for removal was denied and appellants contend that error was thereby committed.

It is true the amounts in the aggregate of the several separate causes of action, exclusive of interest and costs, are in excess of $3,000, and it is also true, and it appears from the complaint, that the money claimed to be due to no individual depositor amounted to that sum.

A number of authorities are cited by appellants in support of their contention that the cause should have been removed to the federal court, but it is believed they are all readily distinguishable from cases of this kind. What appears to be the correct rule is stated in case of *Troy Bank v. G. A. Whitehead & Co.*, 222 U. S. 39, 32 Sup. Ct. 9, 56 L. ed. 81, as follows:

"When two or more plaintiffs, having separate and distinct demands, unite for convenience and economy in a single suit, it is essential that the demand of each be of the requisite jurisdictional amount; but when several plaintiffs unite to enforce a single title or right, in which they have a common and undivided interest, it is enough if their interests collectively equal the jurisdictional amount." (See, also, *Putney v. Whitmire*, 66 Fed. 385; *Gibson v. Shufeldt*, 122 U. S. 27, 7 Sup. Ct. 1066, 30 L. ed. 1083; *Woodside v. Beckham*, 216 U. S. 117, 30 Sup. Ct. 367, 54 L. ed. 408; *Farmers' Loan & Trust Co. v. Waterman*, 106 U. S. 265, 1 Sup. Ct. 131, 27 L. ed. 115.)

There is in this action, in one sense, a unity of interest, which lies in the fact that all of the causes of action are upon the same bond and for the same breach thereof and on the same default or neglect of duty on the part of the bank commissioner, and the bond runs to the state of Idaho to and for the use and benefit of all parties who are aggrieved by the breach thereof, but the depositors in the bank had separate and distinct demands against appellants, none of which amounted to enough to confer jurisdiction upon the federal court. Each of them might have brought a separate action, but it was not necessary for them to do so. The bond was given to and was made payable to the state of Idaho, the claims were united for convenience and economy, and suit was brought in the name of the state as trustee of an express trust.

Therefore we conclude that the claims cannot be aggregated to make the requisite amount for federal jurisdiction.

Secs. 295 and 296, Rev. Codes, provide:

"Sec. 295: Every official bond executed by any officer pursuant to law is in force and obligatory upon the principal and sureties therein to and for the state of Idaho, and to and for the use and benefit of all persons who may be injured or aggrieved by the wrongful act or default of such officer in his official capacity, and any person so injured or aggrieved may bring suit on such bond, in his own name, without an assignment thereof."

"Sec. 296: No such bond is void on the first recovery of a judgment thereon; but suit may be afterward brought, from time to time, and judgment recovered thereon by the state of Idaho, or by any person to whom a right of action has accrued, against such officer and his sureties, until the whole penalty of the bond is exhausted."

Sec. 4092, Rev. Codes, provides:

"An executor, or administrator, or trustee of an express trust, or a person expressly authorized by statute, may sue without joining with him the persons for whose benefit the action is prosecuted. A person with whom or in whose name a contract is made for the benefit of another, is a trustee of an express trust, within the meaning of this section."

If the other view be taken to the effect that the state is the real party in interest and the amounts could be aggregated for the purpose of federal jurisdiction, the jurisdiction of the federal court would be lacking as to diverse citizenship, since where the state is a party the case is not removable from a state to a federal court on the ground of diverse citizenship. (*State v. South Carolina,* 117 U. S. 430, 6 Sup. Ct. 799, 29 L. ed. 962.)

Where it appears that the state is a formal or nominal plaintiff only, then the citizenship of the state is not controlling as to federal jurisdiction. It is the citizenship of the real parties in interest that controls.

Appellants also contend that their demurrer should have been sustained upon the ground of misjoinder of parties plaintiff and misjoinder of causes of action, in that no joint

injury was shown to all the plaintiffs and no joint interest existed in the causes of action; that no cause of action whatever was started on behalf of the state of Idaho.

What has already been said disposes of this contention. There could be no misjoinder of parties plaintiff, for the state alone was plaintiff for the use and benefit of the depositors. There was no misjoinder of causes of action, for sec. 4169, Rev. Codes, as amended by chap. 23, Sess. Laws, 1913 (p. 92), provides that the plaintiff may unite several causes of action in the same complaint where they arise out of contracts, express or implied, if the causes of action so united affect all the parties to the action and do not require different places of trial. While the state of Idaho was not beneficially interested, financially, in any of the causes of action in the complaint stated, it was the proper party plaintiff under sec. 4092, above quoted, for the use and benefit of the depositors in the bank. The demurrer was properly overruled.

At the close of the respondents' case in chief appellants moved for a nonsuit, and at the close of the testimony upon the part of both parties a motion for a directed verdict in their favor was made upon the following grounds:

"1. That the evidence was insufficient to show liability on the part of the defendants.

"2. That there was no proof of loss or injury on the part of the plaintiffs caused by the defendant Platt for which the surety company would be liable.

"3. That there was no evidence that Platt became satisfied that the capital of the bank was impaired, or that the bank was insolvent, or that he neglected any official duty in respect to the bank.

"4. That the closing of the bank was a matter of discretion or judgment and no recovery could be had against the defendant Platt in such a matter, and, therefore, no recovery against the surety company.

"5. That there was no proof that the failure to close the bank arose from any corrupt motive or from malice, or any improper thing on the part of the defendant Platt.

"6. That the complaint does not state a cause of action and no proof beyond the complaint has been offered."

Their motions were denied by the court and appellants contend that the rulings thereon were erroneous. This contention seems to arise from a misinterpretation of the law.

This action is based upon the provisions of chap. 124 (p. 386), Sess. Laws 1911. It becomes the duty of the bank commissioner, under sec. 72 of that chapter, upon being satisfied that the capital of any bank or trust company is impaired or reduced below the amount required by law or the articles of incorporation or below the amount certified to the commissioner as paid in, to require such bank or trust company to make good such impairment or deficiency. If any bank or trust company shall refuse or fail for thirty days after written notice to make good such impairment of or deficiency in its capital, the bank commissioner is authorized and empowered to take charge of its affairs and to wind up its business under the direction of the court in the judicial district in which the bank or trust company is located. Secs. 73 and 74 of said chapter provide:

"Sec. 73. On becoming satisfied that any bank or trust company has unlawfully refused to pay its depositors in accordance with the terms on which such deposits were received, or that any bank or trust company has become insolvent, the bank commissioner may forthwith take possession of the books, records and assets of every description of such bank or trust company and hold the same, and no action or proceeding shall be commenced or maintained for the recovery of the possession of said books, records and assets, or to require a lien thereon except in the proceedings of the district court having jurisdiction over the winding up of the affairs of said bank or trust company. The bank commissioner shall at once proceed to collect all debts, dues and claims, and to sell or compound all doubtful debts, and to sell all real and personal property, on such terms as the court shall direct. Said bank commissioner shall pay over all money, by him received under the order of the court."

"Sec. 74.  To carry out the provisions of sections 72 and 73, the bank commissioner is hereby authorized, and it is made his duty, to take charge of such bank or trust company personally or by his deputy, or by a special deputy appointed by the commissioner for that specific purpose; and the person so taking charge of the affairs of any such bank or trust company shall give a good and sufficient bond to be approved by the court.  All expenses incident to such duties as are hereby imposed, including a per diem not to exceed ten dollars ($10), shall be paid under the order of the court out of the assets of the bank or trust company whose affairs are being administered, and the moneys so received shall, after providing for the compensation of a special deputy and all incidental expenses, be turned into the state treasury.  The compensation of a special deputy, as herein provided for, shall not exceed that allowed regularly appointed deputies connected with the banking department."

It readily appears that if the capital of a bank is found to be impaired and its depleted condition does not amount to insolvency, it becomes the duty of the commissioner to give the notice provided for in sec. 72, but if he should become satisfied that it has unlawfully refused to pay its depositors or that it has become insolvent it is his duty, although the law says he may do so, to forthwith take possession of its books, records and assets as provided for in sec. 73.

Where power is given by statute to public officers in permissive language—as that they *may* do a certain thing—the language used will be regarded as peremptory if the public interest or individual rights require that it should be so regarded.  (*Supervisors v. United States*, 4 Wall. 435, 18 L. ed. 419; *Hayes v. County of Los Angeles*, 99 Cal. 74, 33 Pac. 766; *State v. Kent*, 4 N. D. 577, 62 N. W. 631; *Ralston v. Crittenden*, 13 Fed. 508, 3 McCrary, 344.)

There was abundant evidence to justify the jury in reaching the conclusion that on October 27, 1911, Platt was satisfied the bank was insolvent, and it is undisputed that he did not take possession of its books, records and assets until December 19th following; also that in the meantime the persons

for whose use and benefit this action was brought deposited their money therein and that a considerable part of it was lost.

The law invests the bank commissioner with discretion while he is making his investigation and up to the point where he reaches the conclusion and becomes satisfied that the bank has unlawfully refused to pay its depositors or has become insolvent, but at this point his discretion ends and it becomes his mandatory duty to close it, a duty the failure to perform which renders him and the surety upon his official bond liable to depositors who lose their money as a direct result thereof. (*State v. American Surety Co.*, 26 Ida. 652, 145 Pac. 1097.)

In their motion for a directed verdict appellants also raised the question of the validity of sec. 73, above quoted. They contend that the law under consideration contemplates that a court proceeding must first be instituted by the bank commissioner before he takes possession of the books, records and assets of a bank or trust company found by him to be insolvent or which has unlawfully refused to pay its depositors; that the theory of respondents is, in effect, that it is the duty of the bank commissioner upon becoming satisfied of one or more of the above-mentioned facts to immediately take charge without instituting a proceeding in court to procure judicial authority so to do. It is appellants' further contention that if said sections 72 and 73 are construed to authorize the commissioner to seize the property and wind up the affairs of the bank without any judicial proceedings, then these sections are in violation of the 14th amendment of the constitution of the United States and of sec. 13, art. 1, and secs. 2 and 13, art. 5, of the constitution of Idaho. We are not in accord with appellants' contention. Clearly, sec. 72 of the act in question contemplates that the bank commissioner shall, under the circumstances described therein, act under the direction of the district court. It is clear that secs. 73 and 74 contemplate that under circumstances described in sec. 73 he shall first take charge of the bank and then proceed in the district court to wind up its affairs.

It appears from the record in this case that Platt did neither of these things, but permitted the bank, without interference upon his part, although he knew it to be in an insolvent condition, to continue business for a period of a month and twenty-three days and to receive deposits of the persons upon whose behalf this action was prosecuted.

Appellants urge that since it appears there may and probably will be other moneys distributed to the creditors of the bank when its assets can be realized upon, that this action is prematurely brought and cannot be maintained until the loss of each depositor has been determined after the affairs of the bank have been wound up. It does not appear that this contention was made in the district court and the question cannot be raised for the first time upon appeal. (*Atkinson v. Singer Mfg. Co.*, 14 Misc. 630, 35 N. Y. Supp. 117; *Logan v. Slade*, 28 Fla. 699, 10 So. 25; *Johnson v. Meyer*, 54 Ark. 442, 16 S. W. 123.) Furthermore, should additional funds arise from the disposal of such assets as still remain in the hands of the receiver, the surety company, upon payment of the judgment, may be subrogated to the rights of the persons in whose behalf this action is brought.

Appellants complain that the judgment includes interest from the date of closing the bank and that interest should only be allowed as against the surety from the date of demand upon it. It is alleged in the complaint and admitted in the answer that it would have been useless and vain to have demanded payment of the claims here sued upon from Platt; that he would have refused to pay and was unable to do so; that a demand was made upon the surety for payment and was refused, but no date of demand is fixed and none is shown in the evidence.

It is contended that the following instruction given by the trial judge is erroneous:

"If you find for the plaintiff on any of the causes of action, the measure of damages will be the amount deposited by any of the parties beneficially interested between the time when you find that the defendant Platt became satisfied that the bank was insolvent or had failed to pay its depositors in

accordance with the terms of their deposits, and failed to close the bank, if you so find, and the time when the bank was closed, minus any amount which you find such depositors have received as a dividend, or drew out before the bank closed, with interest upon such amount in the sum of 7% per annum from the time of the respective deposits.''

There is error in the instruction above quoted in that it contemplates the collection of interest upon the amount of each deposit made between the date Platt should have closed the bank and the date he did close it from the time of the deposit. Interest is only allowable from the date the bank was closed. This error was cured by the verdict, for it appears that the jury allowed interest upon these deposits from the date of the closing of the bank instead of from the dates the deposits were made.

There is lack of harmony among the authorities as to the time interest begins to run against the surety upon a bond. It is decided in some cases that a surety is not liable for interest prior to demand made for payment, and that in the absence of such demand the interest period commences with the filing of the action to recover the principal debt. Other cases hold that interest may be allowed against the surety from the date of the breach in the conditions of the bond. even though by so doing the judgment exceeds the amount specified in the bond as the penalty thereof. In this case the amount of the judgment is less than the penalty of the bond, so that question does not arise here.

The reasonable rule seems to be that in cases of this kind where the amount of the claim is definite and certain or can be readily ascertained—of a character not wholly unliquidated—in the absence of a stipulation in the bond to the contrary and in the absence of a controlling statutory provision, interest begins to accumulate as against the surety at the same time as against the principal obligor. If a breach in the conditions of a bond creates a debt on the part of the principal, it becomes the debt of the surety as well, and if it is unnecessary to make demand upon the one in order to start the interest period, none need be made upon the other.

(*Clark v. Wilkinson,* 59 Wis. 543, 18 N. W. 481; *Whereatt v. Ellis,* 103 Wis. 348, 74 Am. St. 865, 79 N. W 417; *Thomassen v. Hall Co.,* 63 Neb. 777, 89 N. W. 389, 57 L. R. A. 303; *Lumber Co. v. Peterson & Sampson,* 124 Iowa, 599, 100 N. W. 550.)

Each depositor was entitled to receive from the bank on the date it suspended business the full amount of the balance due on his deposit made subsequent to October 27, 1911, and is entitled to interest thereon at the rate of 7% per annum from the date of its suspension until paid. A depositor has exactly the same right to his interest under these circumstances as he has to his principal, and the loss of both principal and interest, due to the failure of the bank commissioner to discharge his duty, are elements of damage of which his failure is the proximate cause and are covered by his official bond. The amounts of the deposits were definite and certain, and tender of payment might have been made by Platt or his surety immediately upon the failure of the bank, in which event no interest would have accumulated.

Complaint is made that the court refused to give to the jury certain instructions asked for by appellants; that the instructions given did not clearly state the law, particularly with respect to the intent and motive which actuated Platt in neglecting and refusing to close the bank when he found it to be insolvent. We have carefully examined these instructions and find no error therein, except the one above quoted, which, as heretofore indicated, was cured by the verdict. Instructions V and VI contain such a clear statement of the law relative to the duty of a bank commissioner in cases of this kind that they will be here quoted:

"V. Whenever a statute imposes certain duties upon an executive officer like a bank commissioner, and directs that he shall use his discretion in passing upon certain matters, he is not liable for a mere mistake in judgment or opinion committed by him in exercising such discretion. Accordingly, if the bank commissioner in the exercise of his discretion shall merely make a mistake in passing judgment upon the question of whether or not the capital of a bank was impaired

and reduced below the amount required by law, or upon the question as to whether or not the bank had unlawfully refused to pay a depositor in accordance with the terms of his deposit, or upon the question as to whether said bank had become insolvent, such bank commissioner would not be liable for such mistake in judgment, no matter what might be the consequences.

"VI. However, if upon exercising his discretion and using his own judgment, the bank commissioner of the state becomes satisfied in his own mind that any bank or trust company has unlawfully refused to pay its depositors in accordance with the terms of their deposits, or that such bank has become insolvent, it becomes his duty to forthwith take possession of the books, records and assets of every description of such bank and hold the same, and to collect all debts, dues and claims and sell or compound all doubtful debts and to sell all real and personal property on such terms as the court of said judicial district shall direct."

Where a statute imposes a duty upon one for the protection and benefit of others and does not invest him with discretionary power in the matter, if he neglects to perform the duty he is liable to those for whose protection the statute was enacted for any damage resulting proximately from his neglect, whether he be actuated by malice, a corrupt motive or otherwise. (*Baxter v. Coughlan*, 70 Minn. 1, 72 N. W. 797; Throop on Public Officers, sec. 724.)

In case of *Amy v. Supervisors*, 11 Wall. 136, 20 L. ed. 101, Mr. Justice Swayne, delivering the opinion of the supreme court of the United States, said:

"The rule is well settled that where the law requires absolutely a ministerial act to be done by a public officer, and he neglects or refuses to do such act, he may be compelled to respond in damages to the extent of the injury arising from his conduct. There is an unbroken current of authority to this effect. A mistake as to his duty and honest intention will not excuse the offender."

It follows that the surety upon the official bond of such officer given to secure the faithful performance of his duty is

also liable.    (*People v. Gardner,* 55 Cal. 304; *People v. Smith,* 123 Cal. 70, 55 Pac. 765; *State v. American Surety Co., supra.*)

We find no reversible error in the record, and the judgment of the trial court is accordingly affirmed. Costs are awarded to the respondents.

Budge, J., concurs.