ANNIE B. BRYAN, JOINED BY HER HUSBAND, N. C. BRYAN, *Plaintiffs in Error*, v. S. H. BULLOCK AS RECEIVER OF THE STATE BANK OF KISSIMMEE, *Defendant in Error*.

Opinion filed August 5, 1922.

1. The statutory liability of a purchaser of stock in a Florida banking corporation is a statutory obligation imposed upon the holder of the stock by the purchase thereof and a married woman who acquires stock in a banking corporation, by purchase or otherwise, is liable to the statutory obligation.

2. It is competent for the legislature to depart from the rules and analogies of the common law and to make married women who are stockholders of corporations liable for debts to creditors as other stockholders are made liable.

3. A judgment against a married woman as a stockholder of a banking corporation for the additional statutory liability will be satisfied out of her separate estate.

4. The appointment by the State Comptroller of a receiver to take charge of the assets and affairs of a State bank which has forfeited its rights, privileges and franchises in the Comptroller's discretion, is not the appointment of a receiver within the meaning of the law that makes the power of appointing a receiver a judicial function.

5. Section 4162 Revised General Statutes of 1920 is not void as being in violation of Article II of the Constitution distributing the powers of the State Government. The section provides for the appointment by the State Comptroller, when he shall become satisfied that any State banking corporation has become insolvent and is in default, of a receiver to take charge of the assets and affairs of such bank. Such power vested in the Comptroller by the statute is a proper exercise by the legislature of its police power and is merely a rule and regulation with which state banks must comply as a condition upon which the transaction of such a business as banking shall be carried on and upon which the management and control of such business shall depend.

6. The business of conducting a bank is not *juris privati* only. It is subject to public regulation because affected with a public interest.

A Writ of Error to the Circuit Court for Osceola County, C. O. Andrews, Judge.

Judgment affirmed.

*Cheney & Akerman,* for Plaintiffs in Error;

*Johnston & Garrett,* for Defendant in Error.

ELLIS, J.—The State Bank of Kissimmee, is a Florida banking corporation. Mrs. Annie B. Bryan, a married woman, was a stockholder of the corporation, owning in her own right forty shares of the capital stock of the par value

of one hundred dollars each. On June 16th, 1920, the State Comptroller upon an examination of the bank's affairs discovered it to be insolvent and appointed S. H. Bullock as Receiver thereof with the usual powers and duties incident thereto. The appointment of the Receiver was confirmed by an order of the Judge of the Circuit Court for the Seventeenth Judicial Circuit on June 23rd, 1920.

On September 1st, 1920, the Receiver made an assessment against all the stockholders of the bank of an amount equal to the par value of the stock held by them and required such assessment to be paid immediately by each according to the amount of stock held by him or her. Demand was made by the receiver upon Mrs. Bryan for the amount of four thousand dollars, the amount being equal to the par value of the shares of stock held by her. She refused to pay the assessment and the receiver brought his action. The defendant demurred to the declaration and the demurrer was overruled. She then pleaded in abatement and a demurrer to the pleas was sustained. Declining to plead over judgment for the amount claimed to be due was entered in favor of the plaintiff, and Mrs. Bryan seeks to reverse the judgment on writ of error.

The questions presented by both the demurrer and the pleas are the same. The defendant contends that the appointment of the Receiver by the Comptroller was invalid because the act of the legislature under which the appointment was made is void because unconstitutional as violating Article 2 and Article 5 of the constitution, consequently the Receiver had no authority of law to make the assessment. The defendant also says, that if the appointment of the Receiver was valid, she is not liable because she was a married woman at the time of the assessment and no judgment in personam can lawfully be entered against her.

Taking up for consideration the questions presented in reverse order, we will discuss first the proposition that a married woman is not liable under the statute for the contracts, debts and engagements of the banking company in which she is a stockholder to the amount of the par value of her stock in addition to the amount invested by her in such shares.

The argument rests upon the doctrine that as a married woman has no contractual capacity in this State, her contracts are void and no personal judgment may be entered against her for breach thereof. Several decisions of this court are relied upon in support of the general doctrine. See Dollner, Potter & Co. v. Snow et al., 16 Fla. 86; Goss v. Furman, and Furman, Executrix, 21 Fla. 406; Prentiss v. Paisley, 25 Fla. 927, 7 South. Rep. 56; Garvin v. Watkins, 29 Fla. 151, 10 South. Rep. 818; O'Neil v. Percival et ux, 20 Fla. 937; Graham v. Tucker, 56 Fla. 307, 47 South. Rep. 563.

Many other decisions from this court may have been cited, but they also would have been to the same point, that is the common law disabilities of a *feme covert* exist in the laws and policy of this State except in those special instances where the statute expressly vests her with contractual capacity. So it follows that if the acquisition of stock in a Florida banking corporation is a mere matter of contract between the purchaser or subscriber and the corporation so far as liability upon the stock for the debts, contracts and engagements of the corporation is involved, there is no such obligation upon a *feme covert* who acquires such stock.

Section 4128 Revised General Statutes of Florida provides that "Stockholders of every banking company shall be held individually responsible equally and ratably and

not for one another for all contracts, debts and engagements of such company to the extent of the amount of their stock therein at the par value thereof in addition to the amount invested in such shares. Persons holding stock as executors, administrators, guardians or trustees shall not be personally subject to any liability as stockholders, but the estates and funds in their hands shall be liable in like manner and to the same extent as the testator, intestate, ward or person interested in trust funds would be, if living and competent to hold the stock in his own name.''

·In McNeill v. Pace, 69 Fla. 349, 68 South. Rep. 177, this court held that the liability of a purchaser of stock in a Florida banking corporation is a statutory obligation imposed upon the holder of stock by the contract of purchase.

A share of stock in a corporation is personal property and subject to sale under execution. See Ploof Machinery Co. v. Fourth Nat. Bank of Florida, 67 Fla. 36, 64 South. Rep. 360; Sec. 2846 Revised General Statutes. And married women may acquire any species of property in this State. See 3 Thompson on Corporations, Section 3857.

Now Section 4128 *supra* places no limitations upon married women in the matter of acquisition by them of stock in a banking corporation, nor are there any provisions or exceptions as to liability for the contracts, debts and engagements of the banking company in favor of married women who may own shares of stock in the corporation. See Arkansas Stables v. Samstag, 78 Ark. 517. 94 S. W. Rep. 699. When she acquires stock in a banking corporation, therefore, she acquires it subject to the same condition, liabilities and obligations that all other persons who may acquire such stock carry under the terms of the statute. She is not included in the proviso relating to executors, administrators, guardians and trustees, except in so far as she like

any one else may hold stock in such representative capacity. Nor is there any provision in the statute limiting her liability to the amount actually invested.

It may be true that for unpaid subscriptions upon her stock she may not be sued by the corporation and a personal judgment obtained against her. In that case the corporation may have to pursue the remedies prescribed by the constitution and statutes to subject her separate statutory property to the payment of obligations incurred for its benefit, as when she conducts a mercantile business, for example, but that obligation is one resting in contract and may be enforced, if at all, only in the manner prescribed for subjecting her separate statutory property to the payment of obligations incurred by her for its benefit. But the obligation imposed by statute upon all stockholders in a banking corporation that they shall be individually responsible for all contracts, debts and engagements of such company rateably and equally to the amount of their stock therein at the par value thereof *in addition* to the *amount invested* is one imposed by law as a condition upon which a person may acquire such property. "It is competent for the legislature to depart from the rules and analogies of the common law and to make married women liable for debts to creditors as other stockholders are made liable." See 14 C. J. 1014 note 65-a; Dickinson v. Traphagan, 147 Ala. 442, 41 South. Rep. 272.

Some confusion may have grown out of the language of the courts and text writers in discussing the proposition. The Supreme Court of this State has said that a stockholder's liability arises *ex contractu.* See Saussy v. Liggett, 75 Fla. 412, 78 South. Rep. 334.

It would perhaps be more accurate to say that the statutory additional liability attaches to the acquisition of the

property, it is taken *cum onere.*   The acquisition of such property may not be by contract of purchase, it may be acquired by gift or bequest or inheritance, but however acquired the statutory liability rests upon the owner when the stock becomes his or her property, legally and without fraud, certainly when the transfer is completed upon the books of the company.    4 Thompson on Corporations (2 ed.) Sec. 4886; In the Matter of the Reciprocity Bank, 22 N. Y. 15; Kerr v. Urie, 86 Md. 72, 37 Atl. Rep. 789; 14 C. J. 1030 Sec. 1600; 6 Fletcher Cyclopedia Corporations Sec. 4188.

Much learned discussion by courts and text writers has taken places upon the character of the stockholder's liability, whether penal or contractual.   But whatever the view the better reasoning, as it seems to us, is that a married woman in a state where she is permitted to acquire by gift, devise, bequest, descent or purchase any and all species of property and may become a stockholder and director of corporations, is equally liable with other stockholders for the contracts and debts of the corporation of which she is a shareholder, because the law which gives her the right to acquire such class of property prevents her from avoiding the obligations it carries by denying her capacity to enter into the contractual relation by which she acquired it.    See 6 Fletcher Cyclopedia Corporations Sects. 4176-4188; Smathers v. Western Carolina Bank, 155 N. C. 283, 71 S. E. Rep. 345.

In the event of a recovery of judgment against her it will be satisfied out of her separate estate.    McGill et al. v. Cockrell Jr. et al., 81 Fla. 463, 88 South. Rep. 268.

The first proposition, that the act under which the receiver of the insolvent bank was appointed is unconstitutional and his appoinment was therefore invalid and the as-

sessment without authority of law, is, we think, also unsound.

It is contended that the act is violative of Article 11 of the constitution distributing the powers of the State government. The point being that the appointment of a receiver for an insolvent state bank is a judicial function, that the legislature therefore has no power to make of it an executive function. From that premise the act is attacked from several standpoints as being in conflict with two other clauses of the state constitution, Sections 1 and 11 of Article V.

To support the main proposition, counsel for the plaintiff in error cite the case of Hillsborough Grocery Co. v. Ingalls, 60 Fla. 105, 53 South. Rep. 930. That case was one in which a collateral attack was made upon the jurisdiction of the court which appointed a receiver for the Green Bay Phosphate Company. The opinion announced the general proposition taken from 34 Cyc. 101 that the appointment of receivers is a power exercised by equity courts. The court held that unless the order appointing the receiver was void it could not be collaterally assailed in a judicial action. And that as the decree was not void because it appeared that the court legally existed, had jurisdiction of the parties and subject matter and reasonable opportunity was given to the parties for an adversary hearing, the attack must fail.

With neither of these propositions is there any dispute. The appointment of a receiver is a judicial function. But is the appointment by the Comptroller of an agent, receiver," to take charge of the assets and affairs of a state bank which has forfeited its rights, privileges and franchises in the Comptroller's discretion, the appointment in fact of a receiver within the meaning of the law that makes

the power of appointing a receiver a judicial function? If that question is answered in the negative, then the argument of counsel for the plaintiff in error must fail.

The business of banking is an occupation which bears such an intimate relation to the affairs of man that the proper supervision and control of its affairs and methods of transacting business, the discharge of its functions and obligations, is of great importance to the end that the peace of the community, the welfare of the people, the orderly functioning of indutrial activities and the preservation of faith and confidence in commercial transactions be secured and maintained. A banking company's relation to the community is so intimate and its service of such far reach ing and comprehensive scope that it has become a *quasi* public function and almost, if not quite, classed as a public utility.

The convenience and necessities of the people in their various activities are so dependent upon sound banking operations and strict observance of sound banking principles, that a violation by a banking corporation or association of rules and regulations which are deemed important to the orderly and safe administration of its affairs becomes a baleful influence in the community tending to impair if not destroy the harmony of social and business intercourse. Such improper conduct on the part of a banking company becomes more than the violation of an individual or personal right, if it involved nothing more than the property loss of the officers and stockholders of the corporation its transgressions might be more lightly regarded, but such dereliction of duty involves much more than that, it tends to impair the credit and consequent efficiency in a commercial and industrial way of great numbers of people who may be patrons and correspondents of the company.

It tends to impair the facilities of commercial intercourse, for the time renders the earning of a livelihood more difficult, promotes distrust and tends to destroy confidence which is so essential in all relations and so necessary to the peace of society.

In view of these considerations the legislature in the exercise of its police power has prescribed certain rules and regulations with which state banks shall comply as conditions upon which the transactions of such a business shall be carried on and upon which management and control shall depend.    These conditions are prescribed in that part of the statute law of this state designated as subchapter 1 of Division 4 Title 3 embracing Sections 4121 to 4206 inclusive of the Revised General Statutes 1920, as amended by chapter 6528, Acts 1921.

Section 4162 provides in substance that if the State Comptroller shall become satisfied that any state banking corporation or firm has become insolvent and is in default, or that its affairs are in an unsound condition or threatened with insolvency, or that its liabilities exceed its assets, or that it is transacting business in violation of law, or that it is violating or permitting any of its officers, agents or servants to violate any of the provisions of law relating to banks, he may forthwith "designate and appoint a receiver to take charge of the assets and affairs of such bank." The section provides that the "receiver" shall give bond and that he shall be subject to dismissal by the Comptroller. That such receiver "under the direction and supervision of the Comptroller" shall take possession of the books, records and assets of every description of the company, and in his name shall sue for and collect all debts and claims belonging to the company and "upon the order of the court of competent jurisdiction may sell or compound all bad or

doubtful debts, and, on a like order, may sell all the real and personal property of such bank'' on such terms as the court shall direct, and if necessary to pay the debts of such company, may sue for and enforce the individual liability of the stockholders.

The section requires the ''receiver'' to pay all money received by him to the State Treasurer to be held as a special deposit for the use and benefit of the creditors, subject to the order of the Comptroller and such receiver shall make report from time to time to the Comptroller of his acts and proceedings. The section further provides that the Comptroller shall immediately upon the appointment of ''such receiver'' serve notice upon the president, or any vice president or cashier or upon any director or other person having charge or management of the company, of the appointment of the ''receiver'' and that the Comptroller would apply on a date named to some ''Circuit Judge having jurisdiction over the same, for an order confirming his action and the appointment of a receiver for such banking institution.''

It is provided that the banking company at such hearing may contest before such judge ''the rightfulness and legality of such action of the Comptroller in appointing such receiver.''

It will be observed that the section does not provide that the ''receiver'' which may be appointed by the Comptroller ever becomes the receiver of the Court as is the case when in a litigated cause the court takes control of the assets of a private corporation or firm or individual and administers them through its receiver, but it provides merely for an opportunity to submit to judicial discretion the one and only question, whether the conditions existing warranted the activities of the Comptroller. We do not decide whether

the latter provision was necessary to the constitutionality of the act. The banking law of the state nowhere makes any provision for the transmutation upon the court's order of a Comptroller's agent or receiver into a court receiver.

The Comptroller is vested by law with supervisory power over the organization, management, business methods, conduct and activities of the banking corporation in so far as may be necessary to secure conformity to the rules and regulations prescribed by law for the observance by banking corporations which are deemed to secure, conservative, skillful, honest, efficient and trustworthy service and which constitute the conditions upon which such companies are permitted by the state to transact banking business.

Pursuant to this state policy the Comptroller is vested with the power and charged with the duty through the bank examiners and other agencies to become and keep informed concerning the activities, methods and conditions of state banking companies, and is vested with the discretion to interfere and take actual control of a banking company's affairs when he deems the bank's management to be inefficient and violative of the rules prescribed for securing efficient service. Upon such conditions charters are granted by the state to banking companies and accepted by them and these salutary provisions of the law become a part of the contract between the state and such companies.

We find in these provisions of the statute nothing violative of constitutional limitations. See State v. Title Guaranty and Surety Co. of Scranton, Pa., 27 Idaho 752, 152 Pac. Rep. 189; In re Union Bank of Brooklyn, 73 Misc. 404, 132 N. Y. S. 905; Engel v. O'Malley, 219 U. S. 128, 55 L. Ed, 128, 31 Sup. Ct. Rep. 190; Noble State Bank v. Haskell, 219 U. S. 104, 55 L. Ed. 112, 31 Sup. Ct. Rep. 186, 32 L. R. A. (N. S.) 1062; Ex Parte Pittman, 31 Nev. 43,

99 Pac. Rep. 700, 20 Ann, Cas. 1319; State Savings & Commercial Bank v. Anderson, 165 Cal. 437, 132 Pac. Rep. 755; State ex rel. Goodsill v. Woodmansee, 1 N. Dak. 246, 56 N. W. Rep. 970; Perkins v. Smith, 116 N. Y. 441, 23 N. E. Rep. 21; State v. Richcreek, 167 Ind. 217, 77 N. E. Rep. 1085; Wood v. Bergh, 141 Wis. 569, 124 N. W. Rep. 664, 25 L. R. A. (N. S.) 1217; State ex rel. Taylor v. Cockrell, 27 Okl. 630, 112 Pac. Rep. 1000; Meadowcroft v. People, 163 Ill., 56, 45 N. E. Rep. 991, 35 L. R. A. (N. S.) 176; 3 R. C. L. 379.

At common law the business of banking was open to all and could be followed by the citizen at pleasure, unless forbidden by legislative enactment, but the business is not *juris privati* only, it is subject to public regulation because affected with a public interest.

Judgment affirmed.

BROWNE, C. J. AND TAYLOR, WHITFIELD AND WEST, J. J., concur.