ERNEST AMOS, as Comptroller, *Plaintiff in Error*, v. C. M. CONKLING, and GUST ANDERSON, *Defendants in Error*.

En Banc.

Opinion filed February 1, 1930

Petition for rehearing denied March 26, 1930.

208

*Fred H. Davis,* Attorney General, and *H. E. Carter,* Assistant, for Plaintiff in Error.

*Frank A. Pettibone,* for Defendants in Error.

MATHEWS, Commissioner:

On August 2, 1929, the plaintiff in error made an order freezing the deposits of the First American Bank & Trust Company of West Palm Beach, Florida, to become effective upon being confirmed by the judge of the circuit court of Leon county, Florida.

On August 15, 1929, the plaintiff in error filed a petition in the Circuit Court of Leon County, Florida, praying an order confirming the freezing order. On the same date, two depositors, C. M. Conkling and Gust Anderson, filed objections to the confirmation of said freezing order. On August 17, 1929, the plaintiff in error filed demurrers to and motions to strike the said objections.

The petition of the plaintiff in error for an order of confirmation of the freezing order recites that petitioner, acting under authority of law contained in Chapter 14487, Acts of 1929, and other laws of Florida, had entered an

order freezing the deposits of the First American Bank & Trust Company of West Palm Beach, Florida, upon certain terms and conditions in said order contained, which said order by special reference was exhibited to the Court as a part of said petition for confirmation.

The petition for confirmation also recites that the plaintiff in error at the time of filing the petition had given ten days' notice by publication of his intention to apply to the Circuit Court of Leon County, Florida, to have said freezing order confirmed and that said notice had been published in a newspaper of general circulation in Palm Beach County, Florida, where the bank is located and in a newspaper of general circulation in Leon County, Florida, and that proof of publication of said notices were presented to the Court and attached to said petition.

There appears in the transcript of the record an affidavit of E. M. Pòrter, Chief Bank Examiner of the State Banking Department of the State of Florida, made and sworn to on the 9th day of July, A. D. 1929, and immediately preceding the said freezing order of the plaintiff in error, wherein it appears that the State Banking Department had checked over and examined the various freezing agreements executed by depositors of the First American Bank & Trust Company, and that after a comparison of said agreements with the records of said First American Bank & Trust Company, the State Banking Department had determined that representatives of more than seventy-five per centum of the said bank deposits, exclusive of trust deposits, cashier's checks, certified checks and outstanding drafts, had executed freezing agreements for reopening in conformity with copy attached to said affidavit, giving their written consent to the freezing of deposits of said bank and to the reopening thereof. This agreement referred to and attached to the affidavit of the Chief Bank

Examiner of the State Banking Department of the State of Florida appears to have been signed sometime after June 30, 1929. It recites that the Comptroller had called an assessment of 100 per centum of the stockholders' liability on their assessments and that suits filed by the receiver to collect liabilities of stockholders on stock assessments were pending in an amount in excess of $250,000.00. This agreement requests a freezing order substantially as made by the Comptroller.

The freezing order, omitting the formal parts, is as follows:

"IT IS HEREBY ORDERED that immediately upon the re-opening of the bank the depositors shall be paid in cash by the bank an amount equal to five (5%) per centum of their total deposits; that all remaining deposits be and the same are hereby ordered frozen; and it is further ordered that for twenty-five (25%) per centum of their total deposits, the depositors be given by the bank 'Certificates of Deposit,' dated as of the date the bank shall reopen, due and payable on or before forty-two (42) months from date of re-opening, on which pro rata payments will be declared from time to time as collections warrant.

"FURTHER ORDERED that the bank be empowered on re-opening to immediately set aside the remaining seventy (70%) per centum of deposits of any nature whatsoever, and the same are hereby ordered frozen, and are to be paid by the liquidation of slow and doubtful paper, and the sale of real estate the bank now holds or may acquire in the liquidation of assets of the bank, provided, as collections are effected on the above mentioned paper, real estate and other assets, that depositors shall share in such collections in the proportion that each individual deposi-

tor's interest in the total deposits so set aside shall bear to such collections to be determined at the end of the liquidation period, less a reasonable sum to defray the expense of liquidation. The total amount so paid to the depositors shall not exceed the amount of said deposits so set aside.

"ALSO ORDERED that the money received from the assets of the bank shall be applied to proportional payments of 'Certificates of Deposit' issued to said depositors, it being expressly understood that monies so received shall be first applied to the payment of said 'Certificates of Deposit,' and then when said 'Certificates of Deposit' have been paid, proportional payments upon the seventy (70%) per centum of deposits set aside will then be made in such an amount as the remaining assets of the bank will justify, not exceeding the aggregate, however, seventy (70%) per centum of the deposits as hereinbefore mentioned.

"Dividends on the same to be declared from time to time when funds for that purpose have accumulated to equal five (5%) per centum.

"FURTHER ORDERED that any and all monies deposited after the re-opening of said bank shall not be affected by this order.

"FURTHER ORDERED that this order shall not be construed to affect any persons or things other than depositors of said bank, and the deposits so frozen, and the same shall not be construed to impair the obligation of other creditors or debtors of said bank nor to release any person or persons, or corporation, from any liability, or liabilities, existing against them or hereafter existing against them, the sole purpose and intent of this order being to freeze the deposits upon the consent of the depositors, according

to their written consent presented to me and on file in my office.''

On August 28, 1929, the cause having been argued and submitted by attorneys for the respective parties, one of the judges of said court made an order sustaining the demurrer to the petition of plaintiff in error for an order of confirmation. This order recited that from the showing, papers and files in the case, the said First American Bank & Trust Company of West Palm Beach was insolvent and not susceptible of being placed in a safe and sound condition and that it was never the intent of the Legislature that an insolvent bank be allowed to wind up its own affairs. The plaintiff in error not desiring to amend, the said judge of the Circuit Court of Leon County, Florida, thereupon dismissed the petition.

Writ of error is prosecuted to the order and judgment of the Court in sustaining the demurrer and dismissing the petition.

Under the provisions of Section 6102, Comp. Gen. Laws 1927, Section 4162, Rev. Gen. Stats. of 1920, enacted in 1915 as Section 1 of Chapter 6807, Laws of Florida, the Comptroller on becoming satisfied * * * that any bank doing business in this State under the State laws has ''become insolvent'' and ''is in default'' or that the affairs of any bank doing business in this State under such State law ''is in an unsound condition'' or ''threatened with insolvency because of illegal or unsafe investments'' or that ''its liabilities exceed its assets'' or that ''it is transacting business without authority of law'' or ''in violation of law'' or if the directors or other named officers ''shall knowingly violate or knowingly permit any of its officers * * * to violate any of the provisions of law relative to such bank, * * *'' may forthwith designate and appoint a receiver to take charge of the

affairs of such bank  *  *  *.  And the Comptroller, immediately upon appointing such receiver shall serve notice *  *  *  that he will apply on a date not to exceed ten days from the date of service  *  *  *  to some circuit judge  *  *  *  for an order confirming his action and the appointment of a receiver  *  *  *  and such bank *  *  *  may at such hearing contest  *  *  *  the rightfulness and legality of such action of the Comptroller in appointing such receiver.

Section 4162, *supra,* has continued in force without material change in the language of the section, merely the word "liquidator" being substituted in Section 19 of Chapter 13576, Laws of 1929, for the word "receiver" and Section 20 of Chapter 13576 added, providing for appointment of a general liquidator.

Under the provisions of Section 4167 of the Revised General Statutes of 1920, in force when the Legislature assembled in 1927, it was provided:

> "If from any examination made by the Comptroller or any State Bank Examiner acting under his authority, of any bank  *  *  *  the Comptroller shall have reason to conclude that any such bank  *  *  *  is in an *unsound* or *unsafe* (italics ours) condition, he shall forthwith take possession of the property and business of such bank,  *  *  *  and retain such possession until the affairs are placed in a sound and safe condition, or until a receiver is appointed as provided by law."

Under this section, where the Comptroller had concluded a bank was in an unsound or unsafe condition and had taken possession of the property and business of such bank and retained possession thereof and the affairs of such bank had been placed in a sound and safe condition without a

receiver having been appointed to take charge of the affairs and assets of such bank, the Comptroller should surrender possession of the property and business of such bank to its officers for the purpose of permitting such bank to resume business.

When the Legislature of 1927 convened, the Comptroller had authority, under Sections 4162 and 4167, Revised General Statutes of 1920, to take charge of the assets and affairs of banks doing business in this State under the laws of this State, found to be in an unsound or unsafe condition, and appoint a receiver therefor and proceed towards winding up such banks, but he was without statutory authority to surrender for reopening any bank restored to a sound and safe condition when a receiver had been appointed therefor. The Legislature of 1927, therefore, to facilitate the surrender and reopening of such banks as had restored their affairs to a sound and safe condition or were susceptible of being placed in a sound and safe condition, enacted Chapter 11849, Laws of Florida, granting additional powers to the Comptroller and imposing additional duties on him, which added to Section 4167, Revised General Statutes of 1920, the following:

"PROVIDED, however, that the Comptroller may, upon *conditions* as may be approved by him, surrender possession of such bank  *  *  *  to resume business  *  *  *  AND PROVIDED FURTHER, that upon the petition and consent in writing of the representatives of an amount of the deposits of any such bank,  *  *  *  aggregating seventy-five (75%) per centum or more of the total deposits of such bank,  *  *  *  the Comptroller shall be order freeze all deposits of such bank,  *  *  *  upon such *reasonable terms and conditions* as he may fix, as one of the terms of such resumption of business." (Italics ours.)

See State v. Tunnicliffe, 124 So. R. 279.

The Legislature of 1927, in enacting Chapter 11849, Laws of Florida, declared an emergency to exist for the immediate taking effect thereof.

The conditions of the State at the time of the enactment of Chapter 11849, Laws of Florida, did not require passage of an emergency act for surrender and re-opening of any State bank which could not continue as a going banking institution and meet its obligations in the usual course of business or upon reasonable terms and conditions, and the Court will look to the conditions of the country to be affected by the act as well as to the purpose declared, to ascertain the legislative intent, and will read all parts of the act together. Tampa & J. Ry. Co. v. Catts, 79 Fla. 235, 85 So. R. 364.

While remedial statutes are to be liberally construed so as to suppress the evil and advance the remedy intended, (2 Lewis' Sutherland Statutory Construction, 2nd Ed., page 643), this principle of construction is circumscribed and limited in its scope by the further principle of statutory construction that a statute conferring authority upon an officer under the police power of the State should be strictly construed and all powers not specifically granted or necessarily implied are reserved. State v. Moorehead, 100 Neb. 864, 161 N. W. R. 569, L. R. A. 1917 D. 310.

The intent of a valid statute is the law, and the purpose to be accomplished within constitutional limitations is to be considered as controlling and effect given to the act as a consistent and harmonious whole. State v. Knight, 98 Fla. 891, 124 So. R. 461.

In the construction of a particular statute, or in the interpretation of any of its provisions, all Acts relating to the same subject, or having the same general purpose, may be read in connection with it, as together constituting

one law. The endeavor may be made, by tracing the history of the legislation on this subject, to ascertain the uniform and consistent purpose of the Legislature or to discover how the policy of the Legislature with reference to the subject matter has been changed or modified from time to time. With this purpose in view, therefore, it is proper to consider, not only Acts passed at the same session of the Legislature, but also Acts passed at prior or subsequent sessions, and even those which have been repealed. Old Homestead Bakery v. Marsh, 242 Pac. R. 749, 75 Cal. App. 247.

It is contended that in the absence of allegations and proof that the Comptroller acted arbitrarily or capriciously, that the freezing order cannot be reviewed by this Court. Chapter 11849, Acts of 1927, and its re-enactment by Chapter 14487, Laws of 1929, provide for the making of the freezing order upon *reasonable* terms and conditions. And where it clearly appears that an order made by an administrative officer is not reasonable or just or practical with reference to all the interests directly affected thereby, such order will not be enforced by the Court. State v. L. & N. Ry. Co., 62 Fla. 315, 57 So. R. 175.

It is contended that the extent of the inquiry authorized in this proceeding is to determine the question, whether the consent in writing had been given by the representatives of an amount of the deposits of said bank aggregating 75 per centum or more of the total deposits, that the action of the Comptroller in surrendering possession of the bank for the purpose of permitting it to resume business cannot be inquired into upon the application for an order confirming the freezing order and that the question of whether the First American Bank and Trust Company is susceptible of being placed in a safe and

sound condition was not properly before the court. Chapter 14487, Acts of 1929, provides that before such freezing order shall become effective, the Comptroller shall give * * * notice * * * of his intention to apply * * * to the court * * * to have such order confirmed, at which time any person interested may appear and present objections why such order should not be confirmed.

The provision of Chapter 14487, Acts of 1929, requiring the giving of notice by the Comptroller of his intention to apply to the court to have his freezing order confirmed is very similar to the notice required under Section 4162, Revised General Statutes of 1920, now Chapter 6102 of the Compiled General Laws of Florida, 1927, wherein it is provided that the Comptroller, immediately upon appointing a receiver for a bank shall serve notice upon an officer of the bank, informing him of such appointment and notifying him that he, as Comptroller, will apply on a certain date to one of the judges having jurisdiction over the same, for an order confirming his action in the appointment of such reeciver and at such hearing such bank may contest before such judge the rightfulness and legality of such action of the Comptroller in appointing such receiver.

In discussing this requirement the Court in the case of Bryan v. Bullock, 84 Fla. 179, 93 So. R. 182, held that the only question to be considered and decided by the Court was whether the conditions existing warranted the activities of the Comptroller in appointing the receiver.

In other words, if the bank were found to be in an unsound or unsafe condition, the Comptroller would be authorized to take possession thereof and appoint a receiver.

Upon application for an order confirming and making effective the freezing order, the question to be considered

and decided by the Court was whether the conditions existing warranted the Court in confirming and making effective the freezing order.

Where the terms and conditions of the freezing order are not reasonable, or indicate that the bank is not susceptible of being placed in a sound and safe condition, the court should decline to confirm the freezing order.

It is contended that the presumption of law attaches to the regularity and legality of findings of fact by the Comptroller and to the making of the freezing order. Also it is contended that the petition presents sufficient facts and showing to authorize an order of confirmation. This Court has held that the *prima facie* effect of an order made by an administrative officer may be overcome by admissions in the pleadings that clearly show the invalidity of the order or admit that the order is unreasonable and was arbitrarily made without evidence or due consideration. State v. F. E. C. Ry. Co. 64 Fla. 112, text 137, 59 So. R. 385. The statutory presumption exists only when the officer acts within his authority or in due course of law. State v. F. E. C. Ry. Co., *supra*. Where it is admitted by the pleadings or appears therefrom that the official act under investigation is unjust, unreasonable or arbitrarily made, the Court in the absence of an emergency or public necessity will not sustain the action. State v. F. E. C. Ry. Co., *supra*.

Chapter 14487, Laws of Florida, does not contemplate that administrative acts of the Comptroller are infallible, nor that his acts will be conclusive, but provides for review and confirmation by the court before such freezing order shall become effective. Chapter 14487, Laws of Florida.•

The freezing order presented in this case, requires the bank, upon reopening, to pay five per centum of the deposits in cash, twenty-five per centum in three and one-

half years and the remaining seventy per centum thereafter if collected from the assets of the bank. The postponing of the payment of 70 per centum beyond the period of three and one-half years is clearly unreasonable in point of time, as is also, we think, the prolonging of the payment of twenty-five per centum over a period of three and one-half years.

Delay in final settlement of affairs of an insolvent bank or liquidating bank is fatal to the interests of both creditors and stockholders. A speedy adjustment of delinquent banks is necessary to the efficiency and utility of the law. The freezing order fixes no specific time when 70 per centum of the deposits shall be paid.

The terms and conditions of the freezing order are unreasonable and unjust and the court below was correct in sustaining the demurrer of the plaintiff in error to the petition and dismissing the petition.

It becomes unnecessary to discuss the constitutional questions presented by the defendants in this case. This Court must accept the constitutionality of the provisions of a statute until satisfied beyond a reasonable doubt to the contrary, and will not pass upon the constitutionality of a law in any case unless it is necessary to do so.

Affirmed.

PER CURIAM.—The record in this cause having been considered by the Court, and the foregoing opinion prepared under Chapter 14553, Acts of 1929, adopted by the Court as its opinion, it is considered, ordered and adjudged by the Court that the judgment of the court below should be, and the same is hereby, affirmed.

TERRELL, C. J., AND WHITFIELD, ELLIS, STRUM, BROWN AND BUFORD, J. J., concur.