This case is here upon writ of error to the Circuit Court of St. Lucie County. Paul B. McConville, as plaintiff below filed his declaration against the defendant Fort Pierce Bank Trust Company, defendant in error here, which contained four common counts, attaching bill of particulars, "for money deposited in defendant's bank $493.72."
To this defendant filed a special plea setting up that on August 20, 1927, the State Comptroller took possession of the defendant bank and trust company and continued in possession until March 26, 1928, when the Comptroller upon the petition and consent of the representatives of 75% of the total deposits, issued his formal order under authority of Chapter 11849, Laws of Florida, 1927, freezing all deposits of said bank which order set forth that the bank shall pay 5% of the deposits in cash on reopening, *Page 729 
45% in certificates of deposit due and payable on or before 3 years after date of reopening and that the remaining 50% of deposits of any nature whatsoever to be paid on or before three years from opening from the proceeds obtained from slow and doubtful paper assets, to be classified and set aside for the benefit of such deposits.
The plea further alleges that the defendant is ready at any time to pay the 5% in cash and deliver certificates of deposit and comply with other provisions of the order and the statute authorizing such order.
A demurrer to the plea was filed by plaintiff, which attacks said chapter 11849, Laws of Florida, 1927, as being unconstitutional in that the title of the act contains more than one subject-matter, and does not contain a brief statement of the subject-matter of the act; that it deprives the plaintiff of his property without due process of law; that it impairs the obligation of contracts; and that the plea does not allege that the deposit was made by the plaintiff subsequent to the time said Chapter 11849 went into effect.
The demurrer was overruled and the plaintiff having elected to stand upon the demurrer, a final judgment was entered dismissing the case.
Reverting to the first points raised by the demurrer, it will be observed that the title to Chapter 11849 reads as follows:
 "AN ACT to Amend Section 13, Chapter 6426, Acts of the State of Florida, Approved June 7, 1913, the Same Being Section 4167 of the Revised General Statutes of Florida, 1920, Granting Additional Powers to the State Comptroller, Imposing Additional Duties on the State Comptroller, Conferring Additional Powers Upon Certain Municipal Officers and Special District Commissioners Relating to Public Moneys on Deposit in Banks, and Declaring an Emergency." *Page 730 
As Section 13 of Chapter 6426, Acts of 1913, became, by revision, Section 4167 Revised General Statutes of Florida, 1920, it is clear that under the rule in such cases any defect in the original title was cured by such revision. Christopher v. Mungen, 61 Fla. 513, 55 So. 273.
The act of 1927 may therefore be considered merely as an amendment of Section 4167 of the Revised General Statutes.
Where the title of the amendatory act gives merely the number of the Revised General Statute intended to be amended, it is defective and an insufficient compliance with Section 16 of Article III, Constitution. Webster v. Powell, 36 Fla. 703, 18 So. 441.
In the case of the State v. Allen, 83 Fla. 214, 91 So. 104, 26 A. L. H. 735, it was held that:
 "Where the title of an act amendatory of the Revised General Statutes, gives the numbers of the sections of the law designed to be amended, and also briefly expresses the general subject embraced in such sections, if they have a common connection with the general subject, it is sufficient notice to the Legislature and to the public, as reasonably to lead to an inquiry into the body of the bill to ascertain what changes are proposed in the existing law, and anything germane to the general subject expressed in the title may be included in the act." See also Stokes v. Galloway, 61 Fla. 437, 54 So. 799.
The title here in question gives the section of the original act also its number in the Revision, and it can hardly be said that the substance of the act wholly fails to show a common connection with the general subject expressed in the title.
Similar questions have frequently come before this Court and it is deemed unnecessary to enter into an extensive treatment of the subject. *Page 731 
We have examined the title and body of the original chapter 6426 Acts of 1913, Section 13 of which, by revision and readoption, became Section 4167, Revised General Statutes of 1920, also examined Chapter 11849, Acts of 1927, which specifically names both the original and the revised section by number, and while the title of said Chapter 11849, Acts of 1927, is loosely constructed and requires some inquiry as to the subject-matter covered by it, yet we think that it may reasonably be held that its terms are not so deficient as to render it voidable or inoperative, in fact it does put one on notice that additional powers are being conferred upon the Comptroller, such as may embrace the subject relating to money deposited in banks as where an emergency arises. See State v. City of Jacksonville, decided this term; In re DeWoody, 94 Fla. 96, 113 So. 677. The title cannot be said to be misleading as it confers additional powers on the Comptroller who as a matter of general knowledge is known to have had charge of the administration of State banks mentioned in the title to the act.
This Court is committed to the rule that it should not declare statutes void as violative of Section 16 of Article III of the Constitution relative to titles and subject-matter properly connected herewith except in clear cases free from every reasonable doubt (Ex Parte Pricha, 70 Fla. 265, 70 So. 406); and that although under this section the subject of a statute should be briefly expressed in the title, a title which does not briefly express the subject of an act does not render the act void "if the title does not mislead." Fine v. Moran,74 Fla. 417, 77 So. 533; State v. Vestel, 81 Fla. 625, 88 So. 477.
In the case of Posados v. Warner, Barnes Co. 279 U.S. 340, 49 Sup. Ct. 333, 73, L.Ed. 729, it was held that *Page 732 
the purpose of this constitutional requirement "is to prevent the inclusion of incongruous and unrelated matters in the same measure and to guard against inadvertence, stealth and fraud in legislation."
In this case suit was brought against the bank by the plaintiff April 29, 1929, at which time said Chapter 11849 was in effect. On June 6, 1929, said Chapter was amended by Chapter 14487, by adding the following:
 "Provided further, that before such 'freezing' order shall become effective the Comptroller shall give ten days' notice by publication of his intention to apply to the Circuit Court where the bank is located or of Leon County to have such order confirmed, at which time any person interested may appear and present objections why such order should not be confirmed."
The declaration was filed June 3, 1929, over a year after the freezing order was made, and the plea here questioned was filed July 1, 1929, at which time the Act of 1929 had been in effect since June 6, 1929. In the instant case the Comptroller did not give the ten days' notice by publication of his intention to apply to the circuit court to have such order of the Comptroller confirmed; in fact, at the time the Comptroller issued his freezing order on March 22, 1928, the provision for giving notice as provided above in the proviso of the act of June 6, 1929, was not in effect.
The general rule seems to be that where administrative orders are issued under statutory authority by the officer having direct supervision of such administrative department, they are deemed to be prima facie reasonable and just. See Amos v. Conklin, 99 Fla. 206, 126 So. 283; State v. Florida East Coast R. Co., 64 Fla. 112, 59 So. 385; 22 R. C. L. 491, Sec. 171; United States v. Chemical Foundation, 272 U.S. 1, 71; L.Ed. 131, 47 Sup. Ct. 1. *Page 733 
It has been well said that it must be presumed that the Legislature has considered and discussed the constitutionality of all measures passed by it. 1 Lewis' Sutherland Statutory Construction (2d Ed.) Sec. 82.
There can be very little doubt, if any, that the Comptroller had authority under the above statute to make an order, but as to whether the provisions of the order were reasonable and just may not properly be tested by a demurrer based upon that ground, as the reasonableness of such orders would necessarily depend upon the facts and circumstances developed in each case. It appears that the above-quoted proviso placed at the end of said Chapter 14487 Acts of 1929 was for the purpose of permitting any person interested to appear and test the reasonableness and legality of the provisions of the order of the Comptroller before the trial court before it is confirmed. In the above case of Amos v. Conklin, the main question considered and decided by the Court was whether the conditions provided in the freezing order of the Comptroller warranted the trial court in confirming and making effective such freezing order, and it was held in that case that the conditions provided in the order were unreasonable and therefore the petition to confirm the order of the Comptroller was denied.
It is also insisted that the act of 1927 has the effect if impairing the obligation of contracts. Since 1913, the section in question has retained the provision that pending the possession by the Comptroller and until the affairs are placed in a sound and safe condition or a receiver is placed in control, "all the remedies at law or in equity of any creditor or stockholder against any such bank, banking company or banker shall be suspended" etc.; and it has been held that the relation of creditor and *Page 734 
debtor always exists as between a depositor and the bank in the absence of special contract or rules to the contrary. Bryan v. Coconut Grove Bank Trust Co., 132 So. 481; Miami v. Shutts,59 Fla. 461, 51 So. 929.
It is well established that all contracts are inherently subject to the paramount powers of the sovereign and the exercise of such power is never understood to involve their violation. The statute here involved is not within the provisions of the Constitution forbidding a State to pass laws impairing the obligation of contracts. See Osborn v. Nicholson, 13 Wall. 654, 20 Law Ed. 689, and cases cited.
It was therefore not essential that the plea of defendant allege that the money sued for was deposited in the bank subsequent to the enactment of said Chapter 11849, Acts of 1927. As a matter of record, the freezing order was made March 22, 1928, over ten months after said act of 1927 became a law and it must be presumed that complainant's deposit was either made before the act became a law and was allowed to remain, or that it was made after it became a law, and in either event the deposit would be subject to its provisions. (262 U.S. 649, 67 L.Ed. 1157).
Banks have become indispensable agencies through which industry, trade and commerce are carried on, and while they exist mainly for private profit it cannot be denied that they are preeminently of a public nature and therefore universally recognized as a corporation of a quasi-public nature and subject to statutory regulation for the protection of the public. See 3 R.C.L. 379, 5; Noble State Bank v. Haskell,219 U.S. 104, 575, 31 S.Ct. 186, 299, 55 L.Ed. 112, 341, Ann. Cas. 1912A 487, 32 L. R. A. (N.S.) 1062; Bryan v. Bullock, 84 Fla. 179, 93 So. 182. *Page 735 
The demurrer raises the further point that the plea does not show that the plaintiff signed the alleged agreement or petition to the Comptroller to freeze the deposits. This may be a new question so far as State banks are concerned, however, it cannot be seriously contended that depositors may not apply the composition agreement plan heretofore recognized and applied to other creditors of bankrupts, inasmuch as the Federal Bankruptcy Act does not apply to State banks where State statutes are in force. In the case of Merchants Bank of Mobile v. Zadek, 203 Ala. 518, 84 So. 715, it is stated that an agreement of composition under the Bankruptcy Act entered into by the required number of creditors will be binding upon all for each has the agreement of the others as a consideration for his own engagement, and the effect is to treat all creditors as a class and to enforce the will of the majority upon the minority. See Cumberland Glass Mfg. Co. v. DeWitt,237 U.S. 447, 35 Sup. Ct. 636, 59 L.Ed. 1042. See also, 3 R. C. L. 306, Sec. 130 et seq.
Chapter 11849 Acts of 1927, undertakes to apply the principles of composition of creditors as used in the Federal Bankruptcy Act to State banks in order that all depositors of banks should be treated as a class, upon the theory that that which is for the best interest of a class as a whole may properly be imposed by the Comptroller as one of the conditions for the reopening of the bank. It is seen therefore that the statute under consideration does not impair the obligation of contracts, nor deprive the objecting depositor of the equal protection of the law. (262 U.S. 649, 67 L.Ed. 1157).
The terms of the freezing order in the instant case are somewhat different to those involved in the above case of Amos v. Conklin, and its reasonableness not being *Page 736 
subject to a proper adjudication by means of a demurrer to the plea, it must be held that the order of the trial court overruling the plaintiff's demurrer to the defendant's plea and dismissing the case was not error.
The judgment is therefore affirmed.