I concur in the views expressed by Mr. Justice Whitfield in the majority opinion and in the conclusion that the decree appealed from should be reversed. The Act under which the Interbay Drainage District was created is Chapter 6458, Acts of 1913. That Act, as has been pointed out, has been expressly held to be constitutional by this Court, by the Federal Court of Appeals for this District, and its constitutionality has in effect been affirmed by the Supreme Court of the United States, which has refused to review or reverse the views expressed by the Circuit Court of Appeals for the Fifth Circuit. If the Act is constitutional, as has been held, it must mean something more than a mere scrap of paper. It provides how a special tax district shall be created and who shall act as the agent of the State in giving effect to the legislation involved in the question. The act of creation is no doubt legislative in character, but where a district is created after a finding of fact *Page 41 
required by law to be made to give effect to a legislative act, the finding so made must be and is judicial in character. Being judicial in character, such finding must be accorded the same weight as against a collateral attack as is accorded to any other finding of fact made by a judicial officer. In fact, this principle of law has been expressly recognized in a recent bank case where this court reversed on a writ of error the finding of the Circuit Court of Leon County in a case involving the "freezing" of bank deposits. There the power to freeze was undeniably a part of the legislative police power, but putting it into effect upon a certain contingency of fact was judicial in character and this court so recognized and acknowledged its judicial character by denying a motion to dismiss the writ of error taken to review the court's judgment and by later affirming the judgment itself. See Amos v. Conkling, 99 Fla. 206, 126 So. 283.
Undoubtedly the Legislature could have created the Interbay Drainage District directly without the consent of the local authorities. But it also had power to provide for its creation upon a certain contingency. The principal case in the United States on this subject is that of Houck v. Little River Drainage District, 239 U.S. 254, 60 L.Ed. 266, decided November 29, 1915. In that case it was declared by Mr. Justice Hughes of the United States Supreme Court that: "The Legislature, unless restricted by the State constitution, can create such districts, or, as in this case, it may provide for their institution through a proceeding in the courts in which the parties interested are cited to appear and present their objections, if any."
The question of whether or not the statutory conditions in controversy existed, which incidentally is the question of whether or not the legislative power operates in the particular case, is a judicial one. It is so far *Page 42 
judicial that the taxpayers have the constitutional right to a hearing on such question, or the Act itself will be declared unconstitutional. This was expressly decided in the now famous Texas Road Bond case, Browning v. Hooper, 269 U.S. 396,70 L.Ed. 330.
Now if the taxpayer under the statute had a constitutional right to a hearing, which hearing was required to be full and complete and effective for the purpose, it seems beside the question to say that the decision reached on such hearing by the authority constituted to conduct it is other than judicial in character. Hence, if it is judicial in character, because it hears and determines controverted facts upon which the rights of property rest, then the decision when reached and declared must be a judicial judgment which is conclusive in character as to the facts decided.
In this case there appears to be a valid law providing for the creation of such a district as the Interbay Drainage District purports to be. There appears to be a bona fide
attempt to organize under that law. As the result of that attempt to organize there appears to have been a user of the franchise of the District, and bonds of the District appear to have been issued and sold. Such bonds could only have been issued to accomplish the benefits contemplated by the law authorizing the very existence of the District. There was no authority to issue bonds in excess of benefits. Therefore when issued, the amount of the bonds fixed and determined conclusively the amount of benefits to the District as a whole. When the taxpayers of the district permitted these bonds to be validated without objection on their part, they became bound by the result of the validation proceeding. The fact that the benefits have been fixed in definite relationship to the amount of bonds which have been issued precludes any decree of court reducing the total *Page 43 
amount of assessments contemplated by law to be made to pay the bonds and the interest thereon. While internal adjustments or assessments can undoubtedly be made to meet particular cases, the total amount of tax assessments required to be made to pay the bonds cannot be substantially affected. This is particularly true where the validity of the bonds cannot be attacked, as in this case. The court below was therefore without authority to make a decree which so reduced the total of the assessment of the District as to reduce the same below the total of the assessments necessary to meet the bond requirements.
I also think that in so far as the claim of denial of due process of law was concerned, the court was in error in attempting to recognize such claim and give relief in this case to those who were making no individual complaint in this particular suit. The right to challenge a tax assessment on the ground that due process of law is denied is a personal right to the taxpayer who must assert it and rely on it in his own right. Such right may also be waived in many cases by failure to promptly object on that ground, in consequence of which the rights of others have been built up which it would be inequitable to disturb. See Gast Realty Investment Co. v. Schneider Granite Co., 240 U.S. 54, 60 L.Ed. 523; Shepard v. Baron, 194 U.S. 567, 48 L.Ed. 1115; Weinberger v. Board of Public Instruction, 93 Fla. 470, 112 So. 253; State v. Fort Myers, 95 Fla. 704, 117 So. 97; Abel v. Boynton, 95 Fla. 984,117 So. 507.
As has been pointed out, internal readjustments of assessments may be made to obviate any confiscation of any individual properties when complaint is made by individual taxpayers asserting their individual rights and establishing the same by proof where the same have not *Page 44 
been lost by laches or other considerations, but the court below in attempting to readjust, revise and reduce all of the assessments, individually and collectively, was acting in excess of its judicial powers in the premises and the decree made must accordingly be reversed.
I concur fully in what has been said by Mr. Justice Whitfield in speaking for the majority of the court, and with a certain degree of hesitancy give in addition thereto the individual views hereinbefore set forth in this special concurring opinion.
WHITFIELD AND TERRELL, J.J., concur.