B. H. GRIFFIN v. THE FIRST STATE BANK OF FORT MEADE.

161 So. 416.
Division B.
Opinion Filed May 1, 1935.
Rehearing Denied June 25, 1935.

*Perry E. Murray,* for Plaintiff in Error;
*Nat J. Patterson,* for Defendant in Error.

BUFORD, J.—The writ of error in this case is to review a judgment of the Circuit Court of Polk County against plaintiff in error in favor of defendant in error.

The First State Bank of Fort Meade was found by the Comptroller to be in an unsound and insolvent condition and thereupon he appointed W. H. Lewis, George W. Singletary, and A. S. McMillan as Liquidators. Later, during the process of liquidation, the Comptroller made 100% assessment against stockholders and authorized the liquidators to

enforce the payment of the assessment. The liquidators instituted suit against the plaintiff in error. While the suit was pending and before the issues were made up the Comptroller allowed the bank to reopen and resume business and discharged the liquidators. Thereupon the bank made application to be substituted as plaintiff in suit against Griffin. The application was contested. On final hearing the court granted the order of substitution.

After the bank was substituted as plaintiff demurrer was filed to the declaration as amended. The demurrer questioned the right of the reopened bank to maintain suit. Demurrer was overruled.

Thereupon, pleas were filed which raised the question as to the right of the bank to maintain suit against stockholders for the payment of an assessment made by the Comptroller while the bank was in the hands of liquidators.

To the pleas a replication was filed. The replication in effect alleged that the bank, although reopened for business, was still in the process of liquidation and that the bank was reopened under the provisions of Section 4167 R. G. S., 6108 C. G. L., as amended by Chapter 14487, Acts of 1929, and that it was contemplated by the agreement under which the bank was reopened that the 100% stock assessment which had been made against every share of the capital stock of the bank would be paid in full and be made a part of the assets of the bank.

It is also alleged that in the order reopening the bank the capital stock of the bank had been reduced from $75,000 to $25,000. It was also alleged that all assets in the hands of the liquidators became a trust fund in the hands of the bank as reopened.

Demurrer was filed to the replication. This demurrer contested the sufficiency of the allegations of the replica-

tion to show that the bank was entitled to maintain suit to enforce the payment of the assessment made against the stockholders.

For the reasons hereinafter stated the demurrer should have been sustained.

The Comptroller could not vest in the bank by his order any right or remedy which it was not authorized to exercise under the provisions of the statutes where statutory provisions have been enacted governing such matters.

To determine the questions involved in this case it is not necessary for us to go beyond what has been said in two other cases, nor to cite authorities in addition to those which have been cited in those cases, the decisions and judgments in which must govern the disposition of this case.

The distinction between the remedy of a bank to enforce the payment of an assessment made to replace impaired capital and the remedy available to the Comptroller to enforce the payment of an assessment made to produce funds with which to liquidate the obligations of an insolvent bank was fully discussed and determined by this Court in the case of Hudson v. Bank of Waldo, 105 Fla. 526, 141 Sou. 750, and also in the case of Russ v. Gholson, 102 Fla. 865, 136 Sou. 506.

When the bank here involved was reopened it became again a banking institution under the laws of the State of Florida and was no longer in the process of liquidation. It was authorized to do a banking business and came within the purview of the statutes governing *going* banking institutions. It therefore follows that from time the bank was reopened the method of enforcing the payment of an assessment against stockholders for liability on capital stock was that provided by Section 17 of Chapter 13576, Acts of 1929. If no suit had been instituted by the liquidators it

is not tenable, in the face of the decision of this court above referred to, that the bank could have maintained a suit against the stockholders to enforce the payment of the stock assessment. It cannot be reasonably asserted that the institution of the suit by the liquidators gave the bank when it reopened the right to a remedy which it otherwise did not have. The bank could not be substituted as plaintiff in a suit which it could not under its own right ordinarily institute and maintain.

We think that the contention that the stockholder is bound by the freezing order and its confirmation insofar as such order purports to fix his liability is without merit. At the time Griffin became owner of shares of stock in the bank his personal liability was fixed by the Statutes of Florida as they then existed. The record uncontroverted shows that Griffin became owner of the stock in 1926, three years before the enactment of the statute authorizing the freezing of deposits and the reopening of a bank under that process.

If this judgment is to be affirmed it means that Griffin remains owner of the stock in the reopened and operating bank and if the bank again goes into the hands of the Comptroller for liquidation of its affairs by reason of obligations incurred after being reopened Griffin will be held liable for another assessment by the Comptroller for the benefit of creditors of such reopened institution.

The purpose of collecting money from Griffin is to acquire funds with which the bank may continue its operation as a reopened banking institution. The payment of this and other like obligations are necessary incidents to the continued reopened operation. The statutes at the time Griffin became owner of the stock contemplated that as matter incident to liquidation the Comptroller could make and collect an assessment on that stock equal to one hundred

per cent of its face value and when this assessment was once paid there would be no further liability. That provision did not contemplate a reopening but a liquidation of a bank's affairs. Statutes then authorized assessment of bank stock to make good impairment of capital. Under the latter unless the assessment was voluntarily paid and the stockholder thereby voluntarily continued his liability to assessment by the Comptroller for purpose of liquidation, the liability and remedy against him was limited by the provisions of Section 1 of Chapter 7930, Laws of Fla., later amended by Section 17 of Chapter 13576, Laws of Fla. See Hudson v. Bank of Haldo, *supra*.

In the recent case of Doty v. Love, 55 U. S. Sup. Ct. Rep. 558, 79 Law Ed. 632, opinion filed April 1, 1935, the Supreme Court of the United States had under consideration the case of a bank which had been reopened under the statutes of Mississippi adopted in 1932. In that case when the bank was reopened under a statute somewhat like ours two objecting creditors appealed to the Supreme Court of the State invoking the protection of Article 1, Sec. 10, and the Fourteenth Amendment of the Federal Constitution. The decree granting the petition for reopening of the bank was affirmed and those two objecting creditors appealed the case to the Supreme Court. The Supreme Court affirmed the decree, but as we read the opinion in that case, it has no controlling effect on the case here under consideration. The effort here is to impose a liability on the owner of capital stock which is a statutory liability not in existence at the time he became owner of the stock.

On authority of the opinion and judgments in the cases above cited, the judgment herein should be reversed and the cause remanded for further proceedings not inconsistent with this opinion.

It is so ordered.

Reversed and remanded.

ELLIS, P. J., and TERRELL, J., concur.

. BROWN, J., concurs in the opinion and judgment.

WHITFIELD, C. J., concurs specially in the reversal.

DAVIS, J., concurs in part and dissents in part.

DAVIS, J. (concurring with Whitfield, C. J., and dissenting as to other questions).—The First National Bank of Fort Meade became insolvent and was taken over by the Comptroller. Had this event occurred prior to the enactment of Chapter 11849, Acts of 1927, as an amendment to Section 6108 C. G. L., 4167 Rev. Gen. Stats., 1920, the Comptroller would have been required by the then banking statutes to retain the possession he had taken until such time as the affairs of the insolvent bank might be placed in a safe and sound condition, *or* until a receiver (liquidator) should be appointed to liquidate and wind the same up according to law. Thus, the old statute prior to the 1927 amendment was very much like the National Banking Act from which it was taken, and left no discretion in the Comptroller after he once took charge of the affairs of an insolvent or weak bank except either to (1) have its existing affairs placed in a safe and sound condition by directing the stockholders to put more capital into it for that purpose, or (2) finally wind it up by liquidation of its assets and paying off its creditors to the extent that the assets would warrant.

In 1927, however, the Legislature of this State realized that banks might in some instances become insolvent, so as to necessitate a closing out of their business as of the date of that happening, and yet have so much long drawn out liquidating to do in the course of winding up of its ex-

isting affairs as to practically make it necessary to continue to operate a new banking business at the same old stand, in order to realize anything of consequence out of the liquidation of the insolvent bank's assets.

Accordingly in 1927 and again in 1929 a proviso was written into the banking statute known as Section 4167, Rev. Gen. Stats., to the effect that in case of insolvency of a bank, the Comptroller might, in lieu of either of the two old procedures provided for, "upon conditions as may be approved by him, surrender possession of such bank for the purpose of permitting (it) to resume business, and the Comptroller shall have authority to authorize a reduction in capital," etc., if found necessary for the resumption of business. Another proviso put into the statute was what is known as the "freezing provision (an innovation which was adopted from the Florida law by the U. S. Government during the national banking crisis of 1933) by which the Comptroller might "freeze" deposits and let the bank reopen on a restricted basis in order to continue in business as a bank at the same stand, under the same name, in the same community.

In this case, we have a situation where the First State Bank of Fort Meade, finding itself insolvent, was taken over by the Comptroller. At that time one of its stockholders was Mr. B. H. Griffin, the plaintiff in error in this case, who held $4,000.00 in stock which, by the very act of insolvency, became liable to a 100 per cent. assessment to pay the debts, engagements and obligations of the insolvent bank, The Comptroller in fact made such assessment and imposed a 100 per cent. liability on Mr. Griffin to raise funds with which to pay off as far as possible the debts, engagements and liabilities of the First State Bank of Fort Meade *up until the date of its insolvency and taking over*

*by the Comptroller.* See Section 4128 R. G. S., as amended by Chapter 13576, Acts 1929; Section 6059 C. G. L., 1934 Supplement.

. In this case, after Mr. Griffin's liability as a stockholder of the insolvent First State Bank of Fort Meade *had become fixed by law in favor of the creditors of the defunct bank* who were entitled to look (in part) to the enforcement of the stockholder's statutory liability as a means of realizing payment of their deposits and other claims, the Comptroller made an order under authority of Chapter 14487, Acts of 1929, and other laws of Florida, by which he invoked the "freezing" provisions hereinbefore referred to and permitted the bank to reopen to operate on a new but restricted basis, with reduced capital stock as to its future business.

. This order permitting reopening of the bank was duly approved by the Circuit Court on February 18, 1930, in a proceeding which by virtue of the statute, became binding upon Mr. B. H. Griffin, as a stockholder, so as to preclude any collateral attack by him upon its legality or propriety— the latter questions being subject to review on writ of error. See Amos v. Conkling, 99 Fla. 206, 126 Sou. Rep. 283.

. The "freezing order" did not cancel the already accrued liability of Mr. Griffin as a stockholder of the defunct bank. On the contrary, the Comptroller expressly wrote into the "freezing" order, and the Circuit Court approved it as thus written in, a provision to the effect that "this order shall not be construed to............release any person or persons, or corporation, from liability or liabilities, existing against them, or hereafter existing against them, the sole purpose and intent of this order being to *freeze* the deposits upon the consent of the depositors."

. The "freezing" provisions of the 1929 statute (Chapter 14478, Acts 1929, Section 6108, C. G. L., 1934 Supplement)

were held constitutional by this Court in McConville v. Fort Pierce Bank & Trust Co., 101 Fla. 727, 135 Sou. Rep. 392. So the order of the Circuit Court above referred to became binding upon Mr. Griffin as one of the statutory "conditions" which the Comptroller was authorized to impose on him as a condition to letting the bank reopen under the "freezing" agreement.

Had Mr. Griffin been dissatisfied with the terms of the "freezing" order continuing in force and effect his stockholder's liability against him, or otherwise felt that the same was illegal or improvident, he should have pursued the remedy that was pursued by Mr. Conkling in like situation, by suing out writ of error to the Supreme Court from the "freezing" order. See Amos v. Conkling, *supra*. No such writ of error was sued out, therefore the order is final and binding. Especially is it binding on a stockholder of bank which has accepted a privilege under it that without such order could not have been enjoyed by such bank, namely, a reopening of the bank with the deposits "frozen," thereby benefiting the stockholders petitioning for its reopening.

The practical operation of the "freezing" law is to allow a bank to reopen for business at its old stand and under its own name and there re-engage in the banking business under its pre-existing franchise, which banking franchise as Mr. Justice STRUM pointed out in *Ex Parte:* Amos, 94 Fla. 1023, 114 Sou. Rep. 760, is not *ipso facto* forfeited by the mere fact of a bank's being taken in charge by the Comptroller because of insolvency.

Thus the insolvent bank becomes in effect a liquidator for its own insolvency. And as such it is allowed to reopen with a new banking set up, receive new deposits *which are required to be kept separate from its old business,* and thus keep going as an active institution. Such privilege is given

to it not only for the purpose of enabling it to transact any new business which it may obtain, but for the purpose of assisting it to collect in its old debts for the benefit of its old creditors and depositors. See: Doty v. Love, 55 U. S. Sup. Ct. Rep. 588, 79 L. Ed.

The policy of the legislation is predicated upon the well known fact that persons owing banks will pay their obligations to a going concern still carrying on a banking business, quicker than they will pay them to a defunct one from which they can expect no further banking accommodations. The Legislature appreciated this fact and decided that it would be good public policy to realize the maximum of benefit for the depositors of an insolvent bank, by setting up a new and novel scheme by which the bank's insolvent affairs could be liquidated by itself acting as its own liquidating agency, and yet not involve its new and future depositors into any entanglement with what had happened to its banking affairs prior to the time the bank had first become insolvent.

What plaintiff in error claims in this case is the right to be absolved from a "condition" of the Comptroller's judicially confirmed freezing order by which he has lawfully become bound, namely, the "condition" that he shall make good his already accrued and fixed stockholder's liability to the creditors of the bank at the time it became insolvent. This right is claimed by him merely because the bank has been allowed to re-engage in the banking business in total disregard of the fact that its right to do so rests entirely upon the 1927 and 1929 Acts. His contention, moreover, ignores the fact that the now effecive banking laws of Florida permit several kinds of bank reopenings—some unconditional and some restricted or conditional. Had the Comptroller in this case released the First State Bank of Fort Meade as a bank *whose affairs had been placed in a*

*safe and sound condition,* as he had undoubted jurisdiction to do if such had been the fact, plaintiff in error's contention that his accrued stockholder's liability could no longer be enforced, would be sustainable. But it is not sustainable under the 1927 and 1929 "freezing" statutes.

In this case it affirmatively appears that the bank was released under the terms of 1929 "freezing" law upon special "conditions" that such statute allows to be imposed upon both stockholders and depositors as conditions precedent to having their bank reopened. The condition in this case was that all stockholders remain bound. They had already become bound at the time the bank first became insolvent, therefore their liability was not enhanced by the fact that the insolvent bank was permitted to reopen on a restricted basis.

The conditions imposed by law and approved by the Court became binding on Mr. Griffin when he made no objection to them before the Circuit Court, and prosecuted no appeal from the Circuit Court's approval of same as a condition precedent to the reopening of the bank.

In the McConville case, 101 Fla. 727, 125 Sou. Rep. 392, *supra,* this Court upheld the constitutionality of Chapter 11849 (the 1927 Act) as against a suit brought by a depositor to recover the amount of his deposit from a reorganized bank that had become insolvent and thereafter allowed to reopen under a "freezing" agreement as provided for in 1927 Act. Thus we construed the "freezing" law of 1927 as allowing no remedy for the past deliquency of the defunct bank to be enforced against the reorganized and reopened bank, although the identically named bank had once been closed by reason of insolvency and had thereafter been allowed to reopen without discharging its preexisting debts. The McConville case has recently been cited

with approval by the Supreme Court of the United States in its late decision in Doty v. Love, *supra,* decided April 1, 1935, which has sustained the right of the State to provide for the reopening of defunct banks, without restoration to solvency thereof, as a changed means of liquidation for the protection of creditors by continuing the bank as a going concern for the purpose of collecting its obligated assets and applying them on its existing debts.

But in the Doty v. Love case, *supra,* it is expressly recognized and held by the United States Supreme Court that a "freezing" statute is only valid when the assets of the insolvent bank remain subject to being devoted without impairment or diversion to the payment of its debts—the resumption of business being simply used as a more economical and efficient means to that end. Only the plan adopted by the State's banking department, *and judicially approved* by the State's courts, can be enforced as against the rights of the defunct bank's creditors to continue to look to the assets, tangible and intangible, of the defunct bank for payment, including any causes of action that may have accrued against stockholders at the time the bank became defunct.

Under Doty v. Love, *supra,* a release of the liability of stockholders of a defunct bank can be lawfully accomplished, but it can only be done when it has first been approved by the State's banking department and subsequently judicially approved by the State's courts as well.

In the case now before us the Comptroller affirmatively *refused* to approve a release of Griffin from his liability as a stockholder by writing into his "freezing" order an express provision to the effect that Griffin and all other stockholders should remain liable as such for the assessments due against them on account of the affairs of the defunct bank.

On top of that the Circuit Court made in its confirmatory judgment a decree to the same effect.

Therefore what a majority of the Court are doing in this case is to now adopt such a construction of the 1927 and 1929 "freezing" statutes as will render them as to creditors of the defunct bank, violative of Section 10 of Article 1 of the Constitution of the United States and thereby open the doors of the courts to creditors to sue the reopened and reorganized bank, as a successor in liability subject to being held responsible for the debts of a closed and insolvent one—the avoidance of which result is exactly what the 1927 and 1929 Acts sought to constitutionally guard against on the theory of Doty v. Love, *supra*.

It is certain that this Court cannot so construe the 1927 and 1929 Acts as to withdraw and cancel without any consideration whatsoever therefor, all liability that the law puts on stockholders of defunct banks for the benefit of creditors after the bank has become insolvent. To do so would unconstitutionally impair the obligation of a creditor's contract by destroying and giving away to the prejudice of depositors, and without any corresponding benefit to be conferred in consideration thereof, a cause of action against the stockholder that if enforced would help pay such creditors their claims.

To sustain the contention now made on this appeal is to nullify the Circuit Court's approval of the "freezing" order, and to wipe out part of the security of creditors in the form of the causes of action against stockholders which the law gave to the creditors of the First State Bank of Fort Meade at the time it became insolvent. The result violates the U. S. Constitution because no state statute can thus constitutionally impair the contract rights of the defunct bank's creditors in violation of Section 10 of Article I of the U. S.

Constitution. Furthermore, by so holding in this case, we simply render inoperative and ineffective for the very purposes for which they were designed, the Legislature's enactments designated as Chapters 14487, Acts of 1929, and 11849, Acts of 1927, insofar as reopening of banks under "freezing" provisions is concerned.

By so doing we likewise put in jeopardy the soundness of all of those State banks in Florida which have followed the provisions of these recent statutes assuming that they were effective for the purposes for which they were written and which, for that reason, invoked the provisions of these laws by reopening under their terms after this Court had upheld the constitutionality of such Acts as hereinbefore pointed out.

There is no escape from the conclusion that under Section 10 of Article 1 of the Constitution of the United States, creditors of a defunct bank may either look to the assets of the old bank as a liquidatable institution, or can go against the reopened bank as a successor in liability to the defunct one. The Legislature has no power to deny creditors all right to look either to the old resources or to look to the resources of the reorganized bank.

With due deference to the more experienced judgments of my brethren, I cannot acquiesce in any such view, nor lend my approval to a result so devastating to the financial welfare of Florida.

Accordingly I most reluctantly dissent from the holding of the majority which is to the effect that the stockholder of a defunct bank is not bound by a freezing order confirmed by the Circuit Court, when he voluntarily accepts the benefits thereof annd the statute says that he is so bound, and the Constitution of the United States and of this State will not permit him to be released to the prejudice of cred-

itors of the defunct bank which has been allowed to be re-opened only on condition that the stockholders asking for the reopening agree to remain bound for their assessments in consideration of the depositors' freezing their deposits.

WHITFIELD, ₁C. J. (concurs in reversal.).—When the Comptroller takes over the assets of an insolvent bank, the bank charter remains. If under the statute a new banking business is begun and conducted under the same charter the assets and liabilities of the former business remain distinct from the assets and liabilities of the new banking business, though the officers of the new banking business may under the statute have the custody of the assets of the former banking business with authority to collect and account for amounts due on such assets of the former business. Under the statutes now in force, the bank, after beginning a new business but having the custody of the assets of the former business, is not authorized to maintain an action to recover assessments made by the Comptroller upon the shares of stock of a stockholder in the former business. The Comptroller or the proper liquidator should maintain the action to recover assessments against stockholders who may be liable because of the insolvency of the former banking business.